1  Daniel M. Shanley (SBN 169182)
   dshanley@shanleyapc.com
2  SHANLEY, APC
   533 South Fremont Avenue, Ninth Floor
3  Los Angeles, California 90071-1706
   Telephone: (213) 488-4100
4  Facsimile: (213) 488-4180

5  Attorneys for Plaintiff UNITED
   BROTHERHOOD OF CARPENTERS AND
6  JOINERS OF AMERICA and PACIFIC
   NORTHWEST REGIONAL COUNCIL OF
7  CARPENTERS

8  

# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, an unincorporated association, and PACIFIC NORTHWEST REGIONAL COUNCIL OF CARPENTERS, an unincorporated association, <br><br> Plaintiff, <br><br> v. <br><br> EVELYN SHAPIRO, an individual, <br><br> Defendant. | CASE NO: <br><br> **COMPLAINT** |

COMPLAINT
CASE NO:

SHANLEY, APC
533 S. FREMONT AVE., 9TH FL.
LOS ANGELES, CA 90071
T: (213) 488-4100

# INTRODUCTION

1. This case is another sad chapter in the story of corruption that has plagued the Pacific Northwest Regional Council of Carpenters ("Regional Council" or "Council"). Based on that corruption, the Regional Council's then-Executive Secretary-Treasurer ("EST"), Evelyn Shapiro ("Shapiro"), and the Council's Executive Board asked its parent organization, the United Brotherhood of Carpenters and Joiners of America ("UBC") to impose a Trusteeship over the Council.

2. This case is about the history of repeated election vote rigging directed by Shapiro, the former highest elected officer of the Regional Council, and the heavy costs to the Council members.

3. The Regional Council Bylaws (Section 39(A)) required a secret membership ballot vote for ratification of all negotiated Master Labor Agreement(s) ("MLA").

4. In 2019 there was a ratification vote for the Eastern Washington MLA. After it had become apparent that the recommended tentative MLA was being rejected by the members, Shapiro ordered the Council's then-Director of Contract Administration to "fix the fucking vote." He did as he was told, and the vote was fixed against the wishes of the members.

5. In 2020, there was a wage allocation survey for the members to decide what part of their negotiated MLA raise went on the check or went towards increasing health insurance and pension contributions. Again, after it became apparent that Shapiro's

COMPLAINT
CASE NO:                                          1

SHANLEY, APC
533 S. FREMONT AVE., 9TH FL.
LOS ANGELES, CA 90071
T: (213) 488-4100

recommended allocation was going to lose in that member survey, on information and belief, Shapiro ordered one of her senior appointed staff to fix the vote. The survey result was fixed, and Shapiro's recommended allocation passed.

6.  Most recently, in 2021, there was a member ratification vote for the Western Washington MLA. Again, after it had become apparent that the Shapiro-recommended MLA tentative agreement (TA#3) was going to fail in a vote of the members, Shapiro ordered the Council's then-Director of Organizing to fix the vote. He attempted to fix the vote by submitting false votes on behalf of members who had not yet voted, but an Administrative Staff discovered and stopped these false votes from being counted. Without the false votes, Shapiro's TA#3 was rejected by the members.

7.  Shapiro violated her duties under federal law by fixing these votes.

8.  Shapiro's violations cost the members tens of thousands of dollars.

9.  Shapiro's instructions to rig votes violated her Section 501 fiduciary duties imposed under the Labor Management Reporting and Disclosure Act of 1959 ("LMRDA"). These duties hold union officials to "the highest standards of responsibility and ethical conduct in administering the affairs of the union." *Serv. Emps. Int'l Union v. Nat'l Union of Healthcare Workers*, 718 F.3d 1036, 1044 (9th Cir. 2013) (citing 29 U.S.C. § 501(a)).

10.  Shapiro's breaches of her duties under the Council Bylaws and Constitution also violated Section 301 of the Labor Management Relations Act ("LMRA"). When Shapiro was sworn into office, she made a solemn pledge "to perform the duties of [her]

COMPLAINT
CASE NO:                                            2
SHANLEY, APC
533 S. FREMONT AVE., 9TH FL.
LOS ANGELES, CA 90071
T: (213) 488-4100

office as prescribed in the Constitution and Laws." Vote fixing is not permitted by the Council Bylaws and Constitution. Shapiro also fully acknowledged in that same oath that violating this pledge "stamp[ed]" her "as a person devoid of principle—and destitute of honor—only worthy of the scorn and contempt of [her] Brothers and Sisters."

11. Shapiro's conduct not only shows that she is destitute of honor and worthy of the scorn and contempt of her former Brothers and Sisters, but her conduct also violated her duties under federal law.

12. Because Shapiro violated federal law, she now needs to repay the members for the damages her breaches caused.

## THE PARTIES

13. Plaintiff United Brotherhood of Carpenters and Joiners of America ("UBC") is an unincorporated voluntary association and a "labor organization" as defined by 29 U.S.C. Section 402(i). UBC maintains an office in Washington D.C. On October 25, 2021, the Regional Council's Executive Board unanimously passed a Resolution inviting the UBC's trusteeship and investigation. Exhibit "A" is a true and correct copy of that Resolution.

14. Plaintiff Pacific Northwest Regional Council of Carpenters ("Regional Council" or "Council") is an unincorporated voluntary association and a "labor organization" as defined by 29 U.S.C. Section 402(i). The Regional Council maintains an office in Kent, Washington.

COMPLAINT
CASE NO:                           3

SHANLEY, APC
533 S. FREMONT AVE., 9TH FL.
LOS ANGELES, CA 90071
T: (213) 488-4100

15. Upon information and belief, Defendant Evelyn Shapiro is an individual residing in the state of Washington, and in particular residing in the Western District of Washington. At all relevant times, Shapiro was an agent and representative of the Regional Council as well as an elected officer of the Regional Council, and thus was an officer, agent and/or other representative within the meaning of Section 501 of the LMRDA.

## JURISDICTION AND VENUE

16. This Court has original jurisdiction pursuant to 28 U.S.C. Sections 1331 and 1337. *See Serv. Emps. Int'l Union v. Nat'l Union of Healthcare Workers*, 711 F.3d 970, 980 (9th Cir. 2013), *amended on denial of reh'g by* 718 F.3d 1036 (9th Cir. 2013) (federal courts have Section 501 jurisdiction in action brought by union against its former officials); 29 U.S.C. § 501(a).

17. Pursuant to 28 U.S.C. Section 1391, venue is proper in this district. Defendant Shapiro is a "resident[] of the State in which the district is located" and is domiciled within this district. 28 U.S.C. § 1391(b)(1) & (c)(1). This is also the judicial district where "a substantial part of the events or omissions giving rise to the claim occurred[.]" *Id.* § 1391(b)(2).

## STATEMENT OF FACTS

18. Section 501(a) of the LMRDA sets out the fiduciary duties owed by officers of a union under federal law. 29 U.S.C. § 501(a). Under Section 501, union officials "are held to the highest standards of responsibility and ethical conduct in administering the

COMPLAINT
CASE NO:                                                    4

SHANLEY, APC
533 S. FREMONT AVE., 9TH FL.
LOS ANGELES, CA 90071
T: (213) 488-4100

affairs of the union." *Servs. Emps. Int'l Union*, 718 F.3d at 1044.

19. Section 301 of the LMRA provides for federal jurisdiction over breaches of union bylaws and constitutions.

20. Shapiro violated her Section 501 fiduciary duties and her duties under the Council's Bylaws and the UBC Constitution.

21. Shapiro was the Executive Secretary-Treasurer of the Regional Council from 2018 to October 2021. This is the highest elected office of the Regional Council. As the Executive Secretary-Treasurer, Shapiro was the Chief Executive Officer of the Council.

22. In 2019, the Council was negotiating a new MLA with contractors employing its members in Eastern Washington.

23. After negotiating a tentative agreement, the Council put out the recommended contract for ratification by the members of the Council, as required by the Council's Bylaws (Section 39(A)).

24. The ratification vote was being conducted electronically with members logging online to vote.

25. During the ratification vote it became apparent to Shapiro that the members were rejecting her recommended tentative agreement.

26. Rather than negotiating a better agreement more in line with the wishes of Council members, Shapiro chose to cheat instead. She would "fix the fucking vote."

27. Shapiro discussed this with her appointed Director of Contract

COMPLAINT
CASE NO:
5
SHANLEY, APC
533 S. FREMONT AVE., 9TH FL.
LOS ANGELES, CA 90071
T: (213) 488-4100

Administration, Dan Hutchins, and then ordered him to "fix the fucking vote." He was ordered to fix the vote in favor of the tentative agreement.

28. Hutchins was dependent on Shapiro for his appointed position.

29. Hutchins did as he was ordered. He used his access to the electronic voting platform and voted on behalf of members who had not yet voted.

30. It worked. Hutchins, acting under direction from Shapiro, turned a defeat for Shapiro into a victory. The Eastern Washington MLA passed even though that was not the wish of the majority of the voting members.

31. Shapiro stole members' votes because she was afraid that a public defeat of her recommendation was a stain on her leadership abilities that would negatively impact her 2020 re-election bid. Shapiro wanted everyone to believe that she was a strong leader who delivered what the Council members wanted.

32. Once Shapiro learned that she could fix a vote successfully and without getting caught, Shapiro was quick to do it again.

33. In 2020, there was a wage increase that the Western Washington MLA provided for. Specifically, in 2020, union members were due for a $2.50 raise. It was left to the Council to decide how to allocate this increase between wages and contributions to the health insurance, pension, and other benefits.

34. As a matter of course and past practice, Shapiro made a recommended allocation and also surveyed the members through an electronic portal voting system to

COMPLAINT
CASE NO:
6
SHANLEY, APC
533 S. FREMONT AVE., 9TH FL.
LOS ANGELES, CA 90071
T: (213) 488-4100


decide the allocation.

35. A membership vote was held to determine the allocation of the $2.50 amongst the members' wages, pension, and other benefits.

36. There were three options of varying allocations.

37. Shapiro "recommended" Option 2 which provided for a higher pension allocation.

38. Option 1 was "not recommended" because of the small allocation to the health insurance fund and the pension fund.

39. As the survey votes were coming in it became clear that Option 1 was what the members wanted. Option 1 gave the members more money on the check in the form of higher wages.

40. Shapiro could not take this defeat which was just a few months before her re-election bid.

41. On information and belief, Shapiro for a second time turned to her book of dirty tricks and fixed the survey so Option 2 would win.

42. Option 2 passed by a small margin.

43. The next year, in 2021, Shapiro fixed another MLA ratification vote. This one involved the Western Washington MLA. Shapiro had negotiated a new tentative MLA, which she touted as incredible.

///

COMPLAINT
CASE NO:                                7

SHANLEY, APC
533 S. FREMONT AVE., 9TH FL.
LOS ANGELES, CA 90071
T: (213) 488-4100

44. But the members thought otherwise. The first two recommended tentative agreements were voted down by the members.

45. Shapiro negotiated only minor changes to the third tentative agreement ("TA#3") and again recommended it.

46. The ratification vote for TA #3 was opened on August 1, 2021, and closed on August 5, 2021, at 6:00 p.m.

47. Because Shapiro's staff were able to track the voting results in real time through the electronic voting platform, Shapiro was constantly asking for the status.

48. Brian Eaton, an Administrative Assistant, was asked to pull the vote numbers for the leadership meeting the morning of August 5th.

49. When Eaton pulled the report, the vote was very close with slightly more "no" votes.

50. Based on past consistent voting patterns, Shapiro knew that she was going to lose the ratification vote for TA#3.

51. Shapiro had again miscalculated the wishes of the membership.

52. Shapiro knew she was in political danger if TA#3 failed.

53. Rather than negotiate a better agreement for the membership, Shapiro instead chose to cheat again and turned to her dirty book of tricks to "fix the fucking vote."

54. By this time though, Shapiro's Director of Contract Administration was no longer playing cheating ball for her.

COMPLAINT
CASE NO:                                         8

SHANLEY, APC
533 S. FREMONT AVE., 9TH FL.
LOS ANGELES, CA 90071
T: (213) 488-4100

55. So, Shapiro turned to one of her newly appointed Directors—her Director of Organizing, Juan Sanchez.

56. Sanchez was dependent on Shapiro for his appointed job.

57. Shapiro ordered Sanchez to fix the vote. This was an order for Sanchez to vote yes—in favor of the tentative agreement—for members who had not yet voted.

58. Sanchez did as ordered and voted yes in favor of TA#3 for members who had not yet voted.

59. The electronic portal voting system worked as follows.

60. UBC members used their IDs to sign in and vote.

61. Shapiro made sure that her Director of Organizing was given the members' ID numbers which allowed him to sign in and vote for members who had not yet voted. Shapiro's Director of Organizing did just that. He cast votes for members who had not yet voted and voted for Shapiro's recommended TA#3.

62. However, this time Shapiro's cheating was quickly discovered.

63. During the last day of the ratification vote, Eaton and his co-worker Pryscilla Rodriguez received a flood of calls from frustrated members.

64. Members were complaining that they could not vote. When members entered their union ID to vote, the screen indicated that they had already voted and had voted "yes." This vote was false because they had not in fact voted and had wanted to vote "no.".

/ / /

COMPLAINT
CASE NO:                                    9

SHANLEY, APC
533 S. FREMONT AVE., 9TH FL.
LOS ANGELES, CA 90071
T: (213) 488-4100

65. After receiving a large number of these calls, Eaton decided to look into the issue. He pulled a report from the electronic online voting program, Alchemer.

66. Eaton noticed that almost a thousand "yes" votes had been entered from the same IP address. This IP address was located in Vancouver, Washington.

67. Not only was this "yes" voting pattern from a single IP address suspicious, so too was the fact that the IP address was from outside of the Western Washington Master Labor Agreement geographic area, which did not extend as far south as Vancouver.

68. Eaton first reported his findings to Rick Bourdess, a former executive manager hired from outside of the union. After they went over it several times, they were unable to ascertain any innocent explanation.

69. So, Eaton brought it up to Hutchins. Hutchins knew right away from his experience with Shapiro two years prior what was at play.

70. So, to protect himself, Hutchins confirmed the findings with Matt Swanson, the political director.

71. Hutchins then brought up the vote rigging to Shapiro.

72. "Evelyn [Shapiro] is really pissed right now," Hutchins told Eaton.

73. Eaton immediately obtained legal counsel to protect himself against unlawful retaliation over his vote fixing findings.

74. Shapiro was caught and she grew concerned that her history of vote fixing would be discovered. So, Shapiro allowed Hutchins to remove these false "yes" votes from

COMPLAINT
CASE NO:                                                    10

SHANLEY, APC
533 S. FREMONT AVE., 9TH FL.
LOS ANGELES, CA 90071
T: (213) 488-4100

the final TA#3 tally.

75. Hutchins told Eaton to pull the votes from the same IP address with over 50 "yes" votes.

76. Eaton did this and, without the false votes, TA#3 failed to pass.

77. Suspiciously, Shapiro stated she was not interested in knowing who rigged the vote. She claimed that she would investigate after a ratification agreement passed.

78. Later, Hutchins told Eaton that Shapiro asked him to pull for her the report showing the false votes. With this report, Shapiro attempted to figure out if Eaton could determine that the Director of Organizing had falsely voted per her direction.

79. On August 10, 2021, while Eaton was pulling the report, Eaton noticed that Director of Organizing Sanchez attempted to vote from the same Vancouver IP address as the thousand false votes came from.

80. Eaton had figured out what Shapiro had hoped he would not.

81. Then, a computer forensic audit by an outside investigation firm also linked the IP addresses associated with the false votes to two devices, both of which were maintained by Juan Sanchez.

82. Two more ratification votes were held. The suspect Vancouver, Washington IP address cannot be seen in the TA#4 results.

83. However, this same IP address appeared again in the TA#5 vote results. The TA#5 results shows that this same IP address was linked to one member's UBC ID number,

COMPLAINT
CASE NO:                                     11

SHANLEY, APC
533 S. FREMONT AVE., 9TH FL.
LOS ANGELES, CA 90071
T: (213) 488-4100

1 and that member was Juan Sanchez.

2   84. In other words, Juan Sanchez used the same IP address to vote during the
3 TA#5 as was used in TA#3 to cast the false votes.

4   85. After the UBC came in for supervision, it obtained both Shapiro's phone and
5 Sanchez's phone.  Each had Council text messages.

6   86. Shapiro's text messages with Sanchez, however, were deleted.

7   87. However, at least for a period of time, Sanchez's texts with Shapiro were still
8 accessible.  They were later deleted from Sanchez's iCloud account and thus are no longer
9 accessible from his phone.

10   88. Before they were deleted, a UBC Representative viewed the text messages
11 between Sanchez and Shapiro during the August 2021 TA#3 time period.  These messages
12 included texts regarding Shapiro's order to Sanchez to fix the vote.

13   89. Shapiro messaged Sanchez stating that there are people threatening her and
14 that was why it was so important *doing* what we are doing.  Sanchez responded, "I
15 understand."

16   90. Based on the content and timing of these messages, it was clear that Shapiro
17 had ordered Sanchez to rig the vote and was justifying her orders.

18   91. During this time there were also late-night messages between Shapiro and
19 Sanchez in Spanish.  These appeared to show that Shapiro wanted to return the favor to
20 Sanchez for what he had done regarding the false TA#3 votes.

COMPLAINT
CASE NO:
12
SHANLEY, APC
533 S. FREMONT AVE., 9TH FL.
LOS ANGELES, CA 90071
T: (213) 488-4100

92. When confronted by these two instances of vote rigging, Shapiro resigned her office as the leader of the Regional Council and resigned her membership in the Council.

93. Recently, a Regional Council staff found the 2020 allocation vote to be similar to the rigged TA#3 ratification vote. Like the TA#3 vote, the allocation vote for the recommended Option 2 was failing drastically before the last day. Up until the last day of the allocation vote, most of the votes were for Option 1. However, on the last day, there was a huge turn around and Option 2, Shapiro's recommended option, passed.

94. Shapiro abused her position of power to coerce her appointed subordinates into committing these bad acts for her own personal and political benefit.

95. Shapiro's actions forced the Regional Council to needlessly expend resources that it would not have but for her breaches of her duties. For instance, the Regional Council expended staff and other resources to investigate and uncover the vote rigging in real time and to monitor the votes for TA#4 and TA#5 to ensure that no further vote rigging occurred. This would have been unnecessary but for Shapiro's vote rigging actions.

96. After the vote rigging for TA#3 had been discovered by Regional Council staff, Shapiro engaged in a series of lies to try to throw off discovery of her involvement.

97. First, Shapiro claimed that the Director of Contract Administration had engaged in vote rigging during the 2018 Western Washington member vote for a new Master Labor Agreement.

///

COMPLAINT
CASE NO:
13
SHANLEY, APC
533 S. FREMONT AVE., 9TH FL.
LOS ANGELES, CA 90071
T: (213) 488-4100

98. This timing was selected because it was before Shapiro became the Regional Council's EST and CEO. Doug Tweedy was the EST/CEO at that time.

99. The Director of Contract Administration shot down Shapiro's false story. He admitted that Shapiro had ordered him to fix the vote in the 2019 Eastern Washington membership ratification vote. And that no one had ordered him to fix the vote during the 2018 Western Washington Master Labor Agreement ratification vote, and he did not fix the vote during the 2018 Western Washington ratification vote.

100. Since resigning her office and membership, Shapiro has been talking with her former appointed staff and attempting to disclose private and privileged communications she had had with Council legal counsel in order to waive the attorney-client privilege held by the Council and in order to benefit herself personally.

101. While some of Shapiro's disclosures are fabrications, like the reasons the supervision has been imposed, she has made it clear that she will continue to make improper disclosures to try to force a complete waiver of privilege in order to support her false claims.

102. In making such disclosures and fabricating others, Shapiro seeks to discredit the investigation that uncovered and exposed her repeated instances of vote rigging rather than accepting responsibility.

103. As EST/CEO, Shapiro was privy to many privileged discussions with Council legal counsel.

COMPLAINT
CASE NO:
14
SHANLEY, APC
533 S. FREMONT AVE., 9TH FL.
LOS ANGELES, CA 90071
T: (213) 488-4100

104. All such privileges are held by the Regional Council, and not Shapiro personally.

105. Although Shapiro cannot legally waive any privileges to these communications, her improper disclosure of such communications is designed to try to force some waiver.

106. Disclosure of privileged communications will cause the Regional Council irreparable harm which can be prevented with injunctive relief prohibiting Shapiro's disclosure.

**FIRST CAUSE OF ACTION**

**(Breach of LMRDA 29 U.S.C. § 501 Fiduciary Duty)**

107. Plaintiffs UBC and Regional Council incorporate by reference the allegations set forth in paragraphs 1 through 106 above.

108. Per Section 501 of the LMRDA, officers, and agents of a labor organization "occupy positions of trust in relation to such organization and its members as a group." 29 U.S.C. § 501(a). Each officer must hold the union's property solely for the benefit of the organization and its members, act in accordance with a Union's governing documents, and refrain from having adverse interests in connection with any transaction involving the union. *Id*.

109. Shapiro was an agent, representative and employee of the Regional Council as well as an officer of the Council, and thus a fiduciary under Section 501(a).

COMPLAINT
CASE NO:
15
SHANLEY, APC
533 S. FREMONT AVE., 9TH FL.
LOS ANGELES, CA 90071
T: (213) 488-4100

110. Shapiro violated her Section 501(a) fiduciary duties based on her vote-rigging scheme.

111. Shapiro used the members' property (i.e., their member ID and right to vote) for her own personal benefit.

112. Shapiro failed to disclose the vote rigging even after Brian Eaton raised the issue to the Council. Her lack of disclosure forced the Council and the UBC to spend time and money investigating the vote rigging, which included the hiring of outside consultants.

113. Shapiro's Section 501(a) violations caused the Regional Council and its members financial losses in an amount to be determined at trial.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

COMPLAINT
CASE NO:
16

SHANLEY, APC
533 S. FREMONT AVE., 9TH FL.
LOS ANGELES, CA 90071
T: (213) 488-4100

# PRAYER FOR RELIEF

Plaintiffs request the following relief:

1. Judgment against Shapiro in the amount of damages according to proof at trial;

2. Interest at the legal rate on all damages;

3. Attorneys' fees, litigation expenses, and costs of this action;

4. An order prohibiting Shapiro from ever holding any Section 501 positions with Regional Council or any of its affiliated local unions;

5. An order prohibiting Shapiro's disclosure of all privileged conversations; and

6. Such other and further relief as may be warranted and deemed proper by the Court.

Dated: March 2, 2022                    SHANLEY, A Professional Corporation

                                        *By: /s/ Daniel M. Shanley*
                                        Daniel M. Shanley
                                        Attorneys for Plaintiff UNITED
                                        BROTHERHOOD OF CARPENTERS
                                        AND JOINERS OF AMERICA and
                                        PACIFIC NORTHWEST REGIONAL
                                        COUNCIL OF CARPENTERS

COMPLAINT
CASE NO:                                17

SHANLEY, APC
533 S. FREMONT AVE., 9TH FL.
LOS ANGELES, CA 90071
T: (213) 488-4100

# EXHIBIT A

## EXECUTIVE COMMITTEE RESOLUTION

We, the undersigned members of the Executive Committee of the Pacific Northwest Regional Council of Carpenters, and members of the United Brotherhood of Carpenters and Joiners of America ("UBC"), welcome and consent to the UBC Trusteeship. We need independent supervision and oversight to promptly take control, lock down and preserve the electronic voting system to prevent tampering. We need an independent investigation into the election vote rigging that Regional Council staff uncovered and into other matters the UBC determines necessary. And, we need the UBC to take corrective actions to fix the problems found. In addition, each of us as UBC members pledge our full cooperation with the UBC.

[signatures]