# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, and PACIFIC NORTHWEST REGIONAL COUNCIL OF CARPENTERS, <br><br>                         Plaintiffs, <br><br>             v. <br><br> EVELYN SHAPIRO, <br><br>                Defendant. | NO.: 2:22-cv-00245-JHC <br><br> PLAINTIFFS' OPPOSITION TO THE MOTION TO DISMISS OF DEFENDANT EVELYN SHAPIRO AND MOTION TO STRIKE PRIVILEGED MATERIAL <br><br> ORAL ARGUMENT REQUESTED |

OPPOSITION TO MOTION TO DISMISS & MOTION TO STRIKE
2:22-cv-00245-JHC

Williams & Connolly LLP
680 Maine Avenue SW
Washington, DC 20024
(202) 434-5000

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

FACTS PLED IN THE COMPLAINT ...................................................................................2

LEGAL STANDARD ............................................................................................................3

ARGUMENT .........................................................................................................................3

I.  PLAINTIFFS ADEQUATELY PLED THEIR CLAIMS FOR BREACH OF
    FIDUCIARY DUTY ...................................................................................................3

II. PLAINTIFFS' PROCEDURAL ARGUMENT CONCERNS THE WRONG
    STATUTE. ..................................................................................................................5

III. SECTION 501(A) APPLIES TO BREACHES LIKE SHAPIRO'S SELF-
     INTERESTED VOTE RIGGING. ...............................................................................8

     a.  Shapiro's vote-rigging easily falls within the ambit of Section 501 ......................8

     b.  Plaintiffs have sufficiently alleged they suffered redressable harm due
         to Shapiro's breach. .........................................................................................9

IV. PLAINTIFFS CAN VALIDLY SUE SHAPIRO TO STOP HER FROM
    DISCLOSING THE COUNCIL'S PRIVILEGED INFORMATION. ..............................9

     a.  Plaintiffs may pursue injunctive relief under the LMRDA. .................................10

     b.  Shapiro's improper disclosures of privileged information are not
         protected. .......................................................................................................10

     c.  Plaintiffs' requested relief is narrow and appropriate. ........................................11

     d.  Plaintiffs have adequately pleaded irreparable harm. .........................................12

V.  SHAPIRO'S GRIPES ABOUT COUNCIL ATTORNEY DANIEL
    SHANLEY ARE NOT A BASIS FOR DISMISSAL. .......................................................12

VI. THE COURT SHOULD STRIKE SHAPIRO'S DISCLOSURE OF THE
    COUNCIL'S PRIVILEGED INFORMATION. ...............................................................13

CONCLUSION ......................................................................................................................14

# TABLE OF AUTHORITIES

## CASES

*Adams-Lundy v. Assoc. Prof'l Flight Attendants*, 844 F.2d 245 (5th Cir. 1988)...........................6

*Aguilar v. Avis Rent A Car System, Inc.*, 21 Cal. 4th 121 (Cal. 1999)..........................11

*Am. Motors Corp. v. Huffstutler*, 575 N.E.2d 116 (Ohio 1991) .......................................10, 11, 12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................3

*Carpenters Local Union 721 v. Limon*, 798 F. App'x 169 (9th Cir. 2020) ...................7

*CFTC v. Weintraub*, 471 U.S. 343 (1985) ...............................................................13, 14

*Cherne Indus., Inc. v. Grounds & Assocs.*, 278 N.W.2d 81 (Minn. 1979) ...................................10

*Curry v. Yelp Inc.* 875 F.3d 1219 (9th Cir. 2017) ..............................................................3

*DVD Copy Control Ass'n v. Bunner*, 31 Cal. 4th 864 (Cal. 2003),
    *as modified* (Oct. 15, 2003)............................................................................10

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006) ...............................................12

*Farris v. Seabrook,* 677 F.3d 858 (9th Cir. 2012) ..........................................................12

*Fundamental Admin. Servs., LLC v. Anderson*, 2013 WL 5595933 (D. Md. Oct. 9, 2013)..........11

*Hadix v. Johnson*, 871 F.2d 1087, 1989 WL 27984 (6th Cir. 1989) ...............................12

*Hawaii Reg'l Council of Carpenters v. Yoshimura*, 237 F. Supp. 3d 1029
    (D. Hawaii 2017) .......................................................................................7

*Hood v. Journeymen Barbers, Hairdressers, Cosmetologists & Proprietors Int'l
    Union of Am.*, 454 F.2d 1347 (7th Cir. 1972)................................................8

*Indep. Techs., LLC v. Otodata Wireless Network, Inc.*, 836 F. App'x 531 (9th Cir. 2020) ..........11

*Int'l Union of Elec. v. Statham*, 97 F.3d 1416 (11th Cir. 1996) .............................5, 6, 7

*Int'l Union of Operating Engineers, Local 150, AFL-CIO v. Ward*, 563 F.3d 276
    (7th Cir. 2009)..........................................................................................6, 7

*Int'l Union, Security, Police & Fire Prof'ls of Am. v. Faye*, 828 F.3d 969
    (D.C. Cir. 2016) ........................................................................................7

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018) .........................3, 5

*Lodge 1380, BRAC v. Dennis*, 625 F.2d 819 (9th Cir. 1980) ................................8, 10

OPPOSITION TO MOTION TO DISMISS & MOTION TO STRIKE
2:22-cv-00245-JHC           ii

Williams & Connolly LLP
680 Maine Avenue SW
Washington, DC 20024
(202) 434-5000

*Madsen v. Women's Health Center, Inc.*, 512 U.S. 753 (1994).......................................11

*O'Hara v. Teamsters Union Local No. 856*, 151 F.3d 1152 (9th Cir. 1998)................................9

*Phoenix Ins. Co. v. Diamond Plastics Corp.*, 2020 WL 4261419
    (W.D. Wash. July 24, 2020) ..............................................................13

*Prudential Ins. Co. v. Massaro*, 2000 WL 1176541 (D.N.J. Aug. 11, 2000) ...........................11

*SEIU v. National Union of Healthcare Workers*, 718 F.3d 1036 (9th Cir. 2013) ...........6, 7, 8, 10

*SEIU v. Roselli*, 2009 WL 1382259 (N.D. Cal. May 14, 2009) ....................................7

*Soltysik v. Padilla*, 910 F.3d 438 (9th Cir. 2018) ...........................................3, 5

*Stelling v. Int'l Bhd. of Elec. Workers*, 587 F.2d 1379 (9th Cir. 1978) ...................4, 8, 10

*SW Reg'l Council of Carpenters v. Limon*, 2019 WL 3380109 (C.D. Cal. July 26, 2019),
    *aff'd* 832 F. App'x 526 (9th Cir. 2021)....................................................12

*United States v. Chen*, 99 F.3d 1495 (9th Cir. 1996).......................................13, 14

*United States v. DeFries*, 129 F.3d 1293 (D.C. Cir. 1997).......................................5

*United States v. Ferrell*, 2007 WL 2220213 (W.D. Wash. Aug. 1, 2007) ...........................14

*United States v. Int'l Bhd. Teamsters*, 981 F.2d 1362 (2d Cir. 1992).............................5

## STATUTES AND RULES

29 U.S.C. § 501.................................................................... passim

Fed. R. Civ. P. 12(b) .............................................................9

Fed. R. Civ. P. 12(f) .............................................................13

OPPOSITION TO MOTION TO DISMISS & MOTION TO STRIKE
2:22-cv-00245-JHC                                   iii

Williams & Connolly LLP
680 Maine Avenue SW
Washington, DC 20024
(202) 434-5000

**INTRODUCTION**

This is an action to protect the Pacific Northwest Regional Council of Carpenters ("the Council") and its hard-working members by ridding the union of corruption at its highest levels—repeated vote-rigging by its disgraced former top official, Evelyn Shapiro—that has plagued the union since she took office a few years ago. This past fall, the Council's parent organization, the United Brotherhood of Carpenters and Joiners of America ("the UBC"), undertook to investigate suspected corruption and discovered that Shapiro personally had rigged multiple votes. It is because of the UBC's thorough investigation that the Council, under new leadership, is able to plead facts showing, in extraordinary detail, how Shapiro brazenly rigged votes on labor contract and wage-allocation issues in 2019, 2020, and 2021. Shapiro manipulated votes against the members' wishes because she lacked their support for her preferred positions. When confronted with evidence of her abuse of trust, Shapiro resigned and abandoned her union membership. Since doing so, however, Shapiro has waged war against the union members she had a duty to represent, including by disclosing (and threatening to disclose more of) the Council's privileged and confidential communications with its attorneys.

In response to the misconduct described in the Complaint, Shapiro filed a motion to dismiss, which reads more like a press release than a real legal argument for dismissal. Simply put, Shapiro's positions have no merit. First, she ignores the Complaint's detailed allegations of her vote-rigging activities, and just deems them "generalized." Plaintiffs' Complaint goes above and beyond the "short and plain statement" that Rule 8(a) requires at the pleadings stage. Otherwise, Shapiro just tries to brush past the facts stated in the Complaint by calling them "untrue." A defendant's denial is, of course, no basis for dismissal. Second, Shapiro tries to hide behind a supposed "procedural defect," but that argument reflects a misunderstanding of the particular Labor-Management Reporting and Disclosure Act ("LMRDA") section under which Plaintiffs sue. Shapiro raises procedural arguments under 29 U.S.C. *§ 501(b)*—a provision that governs the steps a union member must take to pursue a claim in the union's name (akin to a shareholder derivative suit)—which has no application to Plaintiffs' claim for breach of fiduciary duty under *§ 501(a)*. Third, Shapiro (mis-)reads the LMRDA so narrowly that, by her view, she

could rig votes and not breach any duties to the union, a reading that is contrary to common sense and binding, well-established law that she herself cites. Fourth, Shapiro argues that Plaintiffs cannot sue to enjoin her from disclosing the Council's privileged information to third parties, but that argument has no basis in the LMRDA or the First Amendment.

Finally, because Shapiro improperly disclosed the Council's privileged information in her motion, Plaintiffs move to strike that portion of her brief.

Accordingly, Plaintiffs respectfully request that the Court deny Shapiro's motion to dismiss and grant Plaintiffs' motion to strike privileged material.

## FACTS PLED IN THE COMPLAINT

The UBC is an international labor union serving over a half million members in the construction trades. In the fall of 2021, the UBC was asked to address concerns about corruption at one of its subordinate labor organizations, the Council, which is headquartered in Kent. Council personnel had learned, in part through angry calls from its members, about suspicious activity during one of its recent master contract approval votes.

The Council's Executive Board asked the UBC to place the Council under investigation and to impose a trusteeship over the Council. *See* Compl. ¶ 13 & Ex. A. The trusteeship was intended to provide oversight of the Council and to perform an "independent investigation into the election vote rigging . . . and into other matters." *Id*. Ex. A.

The UBC hired an outside investigative firm to investigate vote rigging, including by auditing the voting software used by the Council. Compl. ¶ 112. In their investigation, Plaintiffs discovered overwhelming evidence that Shapiro—the Council's highest ranking official ("Executive Secretary-Treasurer")—was personally responsible for the voting fraud. The investigation uncovered three separate instances of ballot stuffing, each of which was linked directly to Shapiro. *Id*. ¶¶ 22-30, 33-41, 43-83. The investigation showed that, because Shapiro believed the voting was not going her way, Shapiro told her subordinate to "fix the fucking vote" and that is exactly what was done, time and again, in 2019, 2020, and 2021. *Id*. ¶¶ 22-30, 33-41, 43-83. Each time Shapiro rigged a vote to suit her own preferred outcome, she forced on the membership a result that was contrary to their interests and wishes. *Id*. ¶¶ 25, 39, 49.

OPPOSITION TO MOTION TO DISMISS & MOTION TO STRIKE
2:22-cv-00245-JHC                     2

Williams & Connolly LLP
680 Maine Avenue SW
Washington, DC 20024
(202) 434-5000

Confronted with the evidence, Shapiro resigned her leadership position and her UBC membership. Compl. ¶ 92. Perhaps believing "a good offense is the best defense," she launched a campaign of vitriol against Plaintiffs. Even though now an outsider, she continues to communicate with her former subordinates at the Council. Among other things, Shapiro began improperly to disclose communications that she claimed to have had with Council lawyers about the Council's legal matters when she was Executive Secretary-Treasurer. *Id.* ¶ 100.[1]

On March 2, Plaintiffs filed this action to hold Shapiro accountable for her conduct and to enjoin Shapiro from disclosing additional privileged information belonging to the Council.

## LEGAL STANDARD

A motion to dismiss for failure to state a claim should not be granted "unless the complaint fails to state a claim to relief that is plausible on its face." *Curry v. Yelp Inc.* 875 F.3d 1219, 1224-25 (9th Cir. 2017) (quotation omitted). When considering such a motion, the court must "accept the plaintiffs' allegations as true and construe them in the light most favorable to plaintiffs." *Soltysik v. Padilla*, 910 F.3d 438, 444 (9th Cir. 2018). Facts outside the pleadings cannot be considered. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

## ARGUMENT

## I. PLAINTIFFS ADEQUATELY PLED THEIR CLAIMS FOR BREACH OF FIDUCIARY DUTY.

Shapiro devotes approximately three lines of text to her first argument, which is just an assertion that the Complaint makes "generalized allegations of wrongdoing." Shapiro Mot. to Dismiss ("Mot.") 6. Plaintiffs need only plead sufficient facts to state a facially plausible claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiffs have done that and much more. Plaintiffs bring suit under LMRDA section 501(a), which imposes fiduciary duties on union officials like Shapiro. 29 U.S.C. § 501(a). These broad fiduciary duties apply in every area of a

---

[1] In her motion, Shapiro admits to disclosing to a third party unspecified communications that she had with the Council's attorney. Mot. 4. Shapiro did not provide advance notice of any such disclosure to the Council. Shapiro admittedly just made unilateral privilege decisions, and disclosed what she wanted without regard to the Council's position on these issues. *Id.*

union officer's role, including union elections. *See Stelling v. Int'l Bhd. of Elec. Workers*, 587 F.2d 1379, 1386 (9th Cir. 1978).

The Complaint details at length the witnesses, evidence, and facts that Plaintiffs' investigation uncovered surrounding three separate instances of vote rigging orchestrated by Shapiro. For example, Plaintiffs explain extensive evidence of vote rigging in a master labor agreement ratification vote in August 2021. During that vote, members called Council personnel, including Brian Eaton and Pryscilla Rodriquez, stating that they were unable to vote and that the Council's voting system indicated they had already voted (when they had not). Compl. ¶¶ 63-64. Records pulled by Eaton showed that nearly 1,000 votes were entered from a single IP address, outside the geographic area relevant to the vote. *Id*. ¶¶ 66-67. Eaton shared those findings with two more witnesses—one of whom previously had been asked by Shapiro on a different occasion to "fix the fucking vote." *Id*. ¶¶ 27, 68-70. By eyewitness accounts, Shapiro was "really pissed" when she learned her vote rigging had been discovered. *Id*. ¶ 72.

Plaintiffs' Complaint further details that a computer forensic audit, conducted by an outside firm, linked the suspect IP address to the devices of Director of Organizing Juan Sanchez, whose credentials also were used to vote from that IP address in a subsequent vote. Compl. ¶¶ 81, 83. Sanchez was newly appointed and depended on Shapiro for his job. *Id*. ¶¶ 55-56. The Complaint also described how Shapiro and Sanchez deleted the text messages they had exchanged about the vote. Before Sanchez's texts were deleted, however, UBC representatives saw his messages with Shapiro: they related to directives to rig the vote. *Id*. ¶¶ 88-90. The Complaint even details Shapiro's motive for this fraud: data harvested from the system on the last day of voting showed that Shapiro's preferred agreement was failing to win membership approval for the third time, and Shapiro feared she was in political danger if members were revealed to have rejected a contract she favored. *Id*. ¶¶ 47-52.

The Complaint continues in this detailed way, including with respect to two other instances of Shapiro rigging votes in 2019 and 2020. *See* Compl. ¶¶ 22-30, 33-41. The detailed facts recounted in the Complaint are obviously not "generalized," and Shapiro's motion does nothing to acknowledge, much less address, them.

OPPOSITION TO MOTION TO DISMISS & MOTION TO STRIKE
2:22-cv-00245-JHC                                              4

Williams & Connolly LLP
680 Maine Avenue SW
Washington, DC 20024
(202) 434-5000

Left with nothing else, Shapiro asserts that she disagrees with Plaintiffs' allegations, as if a defendant's denial were a proper basis for dismissal. Specifically, Shapiro denies rigging votes, and remarkably asserts that the Council's international parent—which discovered and revealed the vote-rigging—was somehow responsible. Mot. 2, 8, 13. Shapiro's factual denials, however, cannot be considered on her motion. *Soltysik*, 910 F.3d at 444; *Khoja*, 899 F.3d at 998. But even setting that aside, Shapiro's arguments would only prove her breach. As an official, Shapiro had a duty to disclose any wrongdoing by the union and to ensure informed consent for authorization of union action. *See, e.g.*, *United States v. Int'l Bhd. Teamsters*, 981 F.2d 1362, 1368 (2d Cir. 1992); *United States v. DeFries*, 129 F.3d 1293, 1307 (D.C. Cir. 1997). Shapiro made no such disclosures.

## II. PLAINTIFFS' PROCEDURAL ARGUMENT CONCERNS THE WRONG STATUTE.

Shapiro claims that Plaintiffs—both of which are labor unions—were required by LMRDA section 501(b) to engage in certain procedures before suing over her fiduciary breaches. That is incorrect. *Unions* may sue officials for breach of fiduciary duty under Section 501(a), as Plaintiffs do here, without following the 501(b) procedures applicable to *members*.

Section 501 sets out federal legal standards—separate from common law fiduciary duties—that apply to union officers. Congress broadly described the "positions of trust" held by union officials, detailed certain specific financial fiduciary duties they owe, and also explicitly permitted union members (not just unions) to bring claims for breach. 29 U.S.C. § 501.

Though inapplicable here, a union *member* can bring suit on the union's behalf if the union and its officers "refuse or fail to sue . . . within a reasonable time after being requested to do so by [the union] member." 29 U.S.C. § 501(b). The purposes of these procedures are "first, to enable individuals to sue on the union's behalf, and second, to make sure that individuals do not preempt a union's right to prosecute its own claims." *Int'l Union of Elec. v. Statham*, 97 F.3d 1416, 1421 (11th Cir. 1996). Much like demand requirements for a shareholder derivative suit, Section 501(b) ensures that union members do not bring suit in the union's stead without first requesting that the union do so itself. "The statutory rights conferred by subsection (a)

belong to the union; individual union members are derivative beneficiaries, and under subsection (b) they may sue in federal court on the union's behalf to vindicate those rights, but only if the union itself first fails or refuses to do so." *Int'l Union of Operating Engineers, Local 150, AFL-CIO v. Ward*, 563 F.3d 276, 288 (7th Cir. 2009).

By contrast, when a *union* itself brings suit like Plaintiffs have done in this action, no such "demand" requirement applies. There is no precedent for—nor is there any practical reason to—apply the procedural requirements in Section 501(b) to a union that seeks recovery on its own behalf. Applying Section 501(b)'s process to a union would be nonsensical: a union would have to ask itself to bring suit and the union would only be permitted to bring suit if the union refused. That is not the law. If a union decides to sue under Section 501(a), it can do so.

Nevertheless, Shapiro argues at length that Plaintiffs failed to perform the procedures required of union members in Section 501(b). Mot. at 8-9. That argument is misguided. As detailed in the Complaint, Plaintiffs brought suit under Section 501(a). *See* Compl. ¶ 110 ("Shapiro violated her Section 501(a) fiduciary duties based on her vote-rigging scheme."); *id.* ¶ 113 ("Shapiro's Section 501(a) violations caused the Regional Council and its members financial losses in an amount to be determined at trial."). Because it is a union, the Section 501(b) procedures for members do not apply. Shapiro fails to cite a single case that says otherwise. Notably, the case on which Shapiro relies, *Adams-Lundy v. Assoc. Prof'l Flight Attendants*, 844 F.2d 245, 248 (5th Cir. 1988), involves a union-member—not a union—lawsuit.[2] Mot. 9.

To make matters worse for Shapiro, she ignores the law that says unions may sue for breach of fiduciary duty under Section 501(a). The plain text of Section 501 plainly gives unions the ability to bring such suits. If that were not the case, it would make no sense for subsection

---

[2] Shapiro also cites to *SEIU v. National Union of Healthcare Workers*, 718 F.3d 1036 (9th Cir. 2013) ("*Healthcare Workers II*"), to misleadingly claim that the Ninth Circuit "declined to extend Section 501 duties to international unions, as opposed to just the regional unions"— apparently trying to argue she owed no duties to the UBC. Mot. 9. That is not what this case says. The Ninth Circuit expressly "d[id] not decide whether § 501 imposes a duty owed to the international union." 718 F.3d at 1046. Regardless, Plaintiffs allege that Shapiro breached a duty to the Council, to which she indisputably owed duties.

OPPOSITION TO MOTION TO DISMISS & MOTION TO STRIKE
2:22-cv-00245-JHC                                              6

Williams & Connolly LLP
680 Maine Avenue SW
Washington, DC 20024
(202) 434-5000

(b) to permit union members to bring such suits when a union "fail[s] to sue." 29 U.S.C. § 501(b). Consistent with that plain language, the Ninth Circuit assumes unions have a private right of action under Section 501(a) and so has considered unions' Section 501(a) claims. *Carpenters Local Union 721 v. Limon*, 798 F. App'x 169, 170 n.1 (9th Cir. 2020); *see also SEIU v. Nat'l Union of Healthcare Workers*, 718 F.3d 1036 (9th Cir. 2013) ("*Healthcare Workers II*"). District courts in the Ninth Circuit have concluded that "an implied cause of action exists for unions to sue under § 501(a)." *Hawaii Reg'l Council of Carpenters v. Yoshimura*, 237 F. Supp. 3d 1029, 1035 (D. Hawaii 2017); *see also SEIU v. Roselli*, 2009 WL 1382259, at *2-3 (N.D. Cal. May 14, 2009).[3] Other courts are aligned. The D.C. Circuit Court of Appeals held "that a section 501 suit is properly understood as belonging to the union and that the union is a proper party to litigate it." *Int'l Union, Security, Police & Fire Prof'ls of Am. v. Faye*, 828 F.3d 969, 975 (D.C. Cir. 2016). "[T]he statute's text and structure reveal Congress's intent both to create federal rights and to allow unions to vindicate those rights in federal court." *Id.* (Tatel, J., concurring). The Eleventh Circuit also found an implied cause of action for unions' Section 501 claims. *Statham*, 97 F.3d at 1419-1421. After all, "[i]t would make no sense to impose federal duties and simultaneously deny the unions the right to enforce those duties." *Id.* at 1420. The Seventh Circuit agreed too, holding that Section 501's "statutory language implies the creation of a federal remedy for the union." *Ward*, 563 F.3d at 287.

In sum, there is no valid basis here for dismissing Plaintiffs' claims for not following the inapplicable procedures for members under Section 501(b). Shapiro's procedural argument thus fails.

---

[3] District courts that permit such claims have explained the mere fact Section 501(b) addresses union member derivative suits does "not foreclose the possibility of a union maintaining a cause of action under § 501(a)" in any way. *Hawaii Reg'l Council of Carpenters*, 237 F. Supp. 3d at 1035; *see also Roselli*, 2009 WL 1382259, at *2-3.

### III. SECTION 501(A) APPLIES TO BREACHES LIKE SHAPIRO'S SELF-INTERESTED VOTE RIGGING.

#### a. Shapiro's vote-rigging easily falls within the ambit of Section 501.

Shapiro next contends that her vote-rigging is outside of the reach of Section 501(a), but this argument contradicts binding Ninth Circuit law and should be rejected. Section 501 sweeps broadly. "Most courts have taken the 'broad view' of Section 501 and interpreted it as establishing the fiduciary duties of labor organization officers in all their functions." *Stelling v. Int'l Bhd. of Elec. Workers*, 587 F.2d 1379, 1386 (9th Cir. 1978). "[T]he reach of Section 501 extends to every area in which subversion of the interests of the union membership may be accomplished by union officials or representatives bent on acting in culpable derogation of those interests." *Hood v. Journeymen Barbers, Hairdressers, Cosmetologists & Proprietors Int'l Union of Am.*, 454 F.2d 1347, 1354 (7th Cir. 1972).

Under Section 501, union officers "are held to the highest standards of responsibility and ethical conduct in administering the affairs of the union." *Healthcare Workers II*, 718 F.3d at 1044. The Ninth Circuit held more than 40 years ago, in *Stelling*, that Section 501 duties apply "in any area of [a union officer's] authority," not only "in their functions related to union financial interests." *Stelling*, 587 F.2d at 1386-87. While Section 501(a) does detail certain specific duties related to union finances, the fiduciary duties under Section 501(a) are not so limited. *Id.* at 1387. Instead, Section 501(a) sets forth "a general statement of the fiduciary relationship of union officials to their union and its members." *Id.* at 1386.

In particular, the *Stelling* Court held that union officers' interference with union members' voting could violate Section 501(a) fiduciary duties. "The allegation that [officers] have denied the membership of the union the constitutionally guaranteed right to vote is a sufficient assertion of a breach of trust on the part of the [officials] to invoke the jurisdiction of § 501." *Id.* at 1387; *see also Lodge 1380, BRAC v. Dennis*, 625 F.2d 819, 828-29 (9th Cir. 1980) (union stated cognizable Section 501 claim related to wrongful denial of referendum vote).

Shapiro ignores this part of *Stelling* when she argues that Section 501(a) duties are strictly limited to financial duties. Mot. 9-10. *Stelling*, however, squarely rebuts that argument

OPPOSITION TO MOTION TO DISMISS & MOTION TO STRIKE
2:22-cv-00245-JHC
8
Williams & Connolly LLP
680 Maine Avenue SW
Washington, DC 20024
(202) 434-5000

and is binding on this Court. Instead of applying *Stelling*'s holding here, Shapiro opts to rely on *O'Hara v. Teamsters Union Local No. 856*, 151 F.3d 1152 (9th Cir. 1998), which is irrelevant here. In that case, the Court simply found that Section 501 did not apply because a union member sued for personal compensation, rather than for the benefit of the union. *O'Hara*, 151 F.3d at 1161. That has nothing to do with Plaintiffs' claims in this case.

        **b.  Plaintiffs have sufficiently alleged they suffered redressable harm due to Shapiro's breach.**

Shapiro otherwise tries to avoid accountability by arguing that "whether or not [she] . . . rigged votes is not a proper use of this Court's time" and "Plaintiffs have suffered no financial losses" because Shapiro resigned her position. Mot. 11-12. Shapiro, however, cannot avoid facing the music under the LMRDA for her breaches, simply because she resigned when confronted with the evidence of her repeated abuse of trust. Her resignation does not make Plaintiffs whole. She also cannot escape Plaintiffs' claims by ignoring detailed allegations of harm resulting from her vote rigging. Among other things, the Council had to spend its own funds hiring an outside firm to investigate vote rigging in Council votes, which included an audit of the electronic voting program. Compl. ¶ 112. The Council expended other funds as well to investigate and address Shapiro's vote rigging. *Id*. ¶ 95. These allegations of harm, and others, are sufficiently detailed at this stage to state a claim under Section 501(a).

## IV.    PLAINTIFFS CAN VALIDLY SUE SHAPIRO TO STOP HER FROM DISCLOSING THE COUNCIL'S PRIVILEGED INFORMATION.

Shapiro tries to somehow dismiss Plaintiffs' request for injunctive relief regarding her improper disclosures of the Council's privileged information. But that request is not an independent claim; it is simply one of many remedies that Plaintiffs seek. Rule 12 only pertains to dismissal of "claim[s]," not requested remedies. Fed. R. Civ. P. 12(b).

In any event, Shapiro's attempt to eliminate Plaintiffs' request so early in the case falls flat. First, it is well-established that unions may seek injunctions to prevent ongoing harm for breach-of-fiduciary duty claims. Shapiro cites no authority to the contrary. Second, Plaintiffs' request does not constitute some "unlawful restraint" on Shapiro's speech. Improperly

OPPOSITION TO MOTION TO DISMISS & MOTION TO STRIKE
2:22-cv-00245-JHC

9

Williams & Connolly LLP
680 Maine Avenue SW
Washington, DC 20024
(202) 434-5000

disclosing another party's privileged information is not "protected." Third, Shapiro's argument rests entirely on a false premise. Plaintiffs do not seek a "gag order." Plaintiffs only seek to prevent her from improperly disclosing the Council's privileged information—a narrow request. Lastly, Plaintiffs have adequately alleged irreparable harm.

### a. Plaintiffs may pursue injunctive relief under the LMRDA.

Contrary to Shapiro's argument, courts across the country routinely accept and adjudicate claims for injunctive relief for breaches of fiduciary duty under Section 501. The Ninth Circuit has repeatedly done so. *See, e.g.*, *Healthcare Workers II*, 718 F.3d at 1050-51; *Stelling*, 587 F.2d at 1385; *Lodge 1380, BRAC*, 625 F.2d at 828. Shapiro, however, ignores that authority, and tellingly cites nothing to the contrary. Instead, Shapiro relies again on inapplicable Section 501(b), which does not govern Plaintiffs' claim. Even more problematically, she contends that her improper disclosures have "no tangible impact upon the subject union and its membership." Mot. 12. That assertion is highly disputed, and it directly contradicts Plaintiffs' well-pled allegations of harm. *See* Compl. ¶¶ 100-06.

### b. Shapiro's improper disclosures of privileged information are not protected.

With injunctive relief plainly available, Shapiro turns to arguing that she can disclose the Council's privileged information because it is "protected speech" under the First Amendment. Mot. 12-13. This argument is absurd on its face, but Plaintiffs' requested injunction in no way limits Shapiro's legitimate speech. Shapiro is free to talk to anyone about non-privileged and non-confidential information, but that is not the case for the Council's privileged information. "[A] former employee's use of confidential information . . . of his employer in violation of a contractual or fiduciary duty is not protected by the First Amendment." *Cherne Indus., Inc. v. Grounds & Assocs.*, 278 N.W.2d 81, 94 (Minn. 1979); *see Am. Motors Corp. v. Huffstutler*, 575 N.E.2d 116, 120 (Ohio 1991) ("Disclosure of confidential information [including privileged information] does not qualify for protection against prior restraint under the First Amendment." (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984); *Snepp v. United States*, 444 U.S. 507 (1980)). Unlawful conduct, like disclosing a union's privileged information, can be enjoined through injunctions. *See, e.g.*, *DVD Copy Control Ass'n v. Bunner*, 31 Cal. 4th 864, 888 (Cal.

2003), *as modified* (Oct. 15, 2003) ("[T]he preliminary injunction [against disclosure of proprietary information] is not an invalid prior restraint under the First Amendment."); *Indep. Techs., LLC v. Otodata Wireless Network, Inc.*, 836 F. App'x 531, 534 (9th Cir. 2020) (upholding injunction against use of company's nonpublic proprietary information).

Courts routinely use injunctions to restrain speech that lacks legal legitimacy. Take, for example, injunctions against false advertising, verbal harassment, or disclosure of trade secrets or confidential business information. In "evaluating injunctions restricting speech," the Supreme Court seeks "to ensure that the injunction was no broader than necessary to achieve its desired goals." *Madsen v. Women's Health Center, Inc.*, 512 U.S. 753, 765 (1994). But "speech may be enjoined where a fair judicial process has determined that a repetitive pattern of speech is unprotected." *Aguilar v. Avis Rent A Car System, Inc.*, 21 Cal. 4th 121, 142 (Cal. 1999). That is precisely what the Complaint alleges here, with Shapiro disclosing the Council's privileged information to third parties. *See* Compl. ¶¶ 100-06.

Shapiro's misconduct here is tailor-made for injunctive relief. And courts grant the type of injunctions Plaintiffs seek: injunctions to prevent disclosure of attorney-client privileged communications. *See, e.g.*, *Am. Motors Corp. v. Huffstutler*, 575 N.E.2d 116 (Ohio 1991); *Fundamental Admin. Servs., LLC v. Anderson*, 2013 WL 5595933 (D. Md. Oct. 9, 2013); *Prudential Ins. Co. v. Massaro*, 2000 WL 1176541 (D.N.J. Aug. 11, 2000).

### c. Plaintiffs' requested relief is narrow and appropriate.

In an attempt to change the narrative, Shapiro grossly mischaracterizes the nature of Plaintiffs' requested injunction, claiming it would be a "gag order." Mot. 12-13. Not true. The Complaint *only* seeks to narrowly prevent disclosure of the *Council's privileged* information.

It is Shapiro's position that has no proper limits. Under her view, a disgruntled former official can disclose legal advice from the union's attorneys, even in an adversarial proceeding, of her own accord. In her view, a former official also can disclose privileged communications in public filings in federal court or try to force disclosure of actual attorney-client privileged communications by making false accounts of such communications. It is alarming, to say the least, that Shapiro admits in her motion that she "has communicated statements from [Council

attorney] Shanley" to third parties, without advance notice to the Council. Mot. 4. Remarkably, Shapiro even disclosed certain attorney-client privileged information in her motion, which is the subject of the motion to strike below. *Id*. 2-4.

Shapiro's careless approach to the privilege and disclose-first, ask-questions-later regime should be rejected, and Plaintiffs' request for this narrow injunctive relief should go forward.

### d. Plaintiffs have adequately pleaded irreparable harm.

Finally, Shapiro claims that Plaintiffs did not allege "a belief of imminent and irreparable harm." Mot. 12. Plaintiffs, however, have not sought a preliminary injunction, and no showing of "imminent" harm is required. *Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012); *cf. eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (factors for permanent injunctive relief).

And with respect to irreparable harm, that is apparent here given the nature of the request, and Plaintiffs have adequately pled it. The Complaint details allegations that Shapiro, after she resigned in disgrace, sought revenge and personal benefits by disclosing the Council's privileged information that she learned when she was the top official of the union. *See* Compl. ¶¶ 100-06. In this day and age, once privileged information is communicated publicly, especially in a high-profile case like this, it is quickly disseminated on the internet, and that bell cannot be unrung.[4] This is thus exactly the type of case where injunctive relief is necessary, because "there is really no adequate legal remedy for a violation of the [attorney-client] privilege." *Hadix v. Johnson*, 871 F.2d 1087, 1989 WL 27984, at *2 (6th Cir. 1989) (Table); *see also Huffstutler*, 575 N.E.2d at 120-21.

## V. SHAPIRO'S GRIPES ABOUT COUNCIL ATTORNEY DANIEL SHANLEY ARE NOT A BASIS FOR DISMISSAL.

Finally, Shapiro argues that Council attorney Daniel Shanley cannot testify while he is lead counsel in this case. *See* Mot. at 14. But this is not an argument for dismissal. Indeed, the

---

[4] Use of a union's privileged information for personal gain—such as an attempt to bolster one's reputation or an attempt to assist a friend against the union—is a further violation of fiduciary duties under Section 501 of the LMRDA. *See, e.g.*, *SW Reg'l Council of Carpenters v. Limon*, 2019 WL 3380109, at *11 (C.D. Cal. July 26, 2019), *aff'd* 832 F. App'x 526 (9th Cir. 2021).

OPPOSITION TO MOTION TO DISMISS & MOTION TO STRIKE
2:22-cv-00245-JHC                                    12
Williams & Connolly LLP
680 Maine Avenue SW
Washington, DC 20024
(202) 434-5000

two cases on which Shapiro relies (*U.S. Fire* and *FMC Technologies*) do not even pertain to dismissal motions or issues.

In any event, Shapiro's concerns about Shanley being lead counsel are now moot. Since she filed her motion, undersigned counsel from Williams & Connolly LLP have entered an appearance and will be taking the lead.

Otherwise, questions about who will be witnesses at trial and what they will address are for a later date, and need not be addressed at this stage. Regardless, Plaintiffs will call multiple witnesses who will substantiate Plaintiffs' claim that Shapiro rigged votes. For example, Shapiro ordered her subordinate, Dan Hutchins, to "fix the fucking vote" in 2019, and he was involved in investigating suspicious findings in a later vote. *See* Compl. ¶¶ 27-30, 69-72, 86-91.

Lastly, to the extent Shapiro's end game is trying to disqualify Shanley, she should bring that motion at the appropriate time, and Plaintiffs will show why such arguments have no merit.

## VI. THE COURT SHOULD STRIKE SHAPIRO'S DISCLOSURE OF THE COUNCIL'S PRIVILEGED INFORMATION.

This Court should strike the portion of Shapiro's motion where she improperly disclosed the Council's privileged information. *See* LCR 7(g). Rule 12(f) permits the Court to strike "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Courts utilize Rule 12(f) to strike sections of a pleading that includes inadmissible or privileged information." *Phoenix Ins. Co. v. Diamond Plastics Corp.*, 2020 WL 4261419, at *2 (W.D. Wash. July 24, 2020) (quoting *Fodor v. Blakey*, 2012 WL 12893986, at *5 (C.D. Cal. Dec. 31, 2012), and collecting cases). "Courts strike privileged material because it is inadmissible and thus can have 'no possible bearing upon the subject matter of the litigation.'" *Id.* (quoting *Fodor*, 2012 WL 12893986, at *8). Communications between a union's official (like Shapiro) and a union's attorney (like Shanley) are privileged when the attorney is hired in a capacity to give legal advice, such as helping the organization comply with legal requirements. *United States v. Chen*, 99 F.3d 1495, 1500 (9th Cir. 1996). The Council is the holder of that privilege. *See, e.g., CFTC*

*v. Weintraub*, 471 U.S. 343, 348-49 (1985); *United States v. Ferrell*, 2007 WL 2220213, at *4 (W.D. Wash. Aug. 1, 2007).

Here, Council attorney Shanley gave legal advice to the Council (through its then-top official Shapiro) about the UBC's investigation of corruption and mismanagement at the Council (including allegations of vote rigging), placement the Council under UBC supervision, administration of the Council's affairs, and other related issues, including certain bargaining agreements in late 2021. Declaration of Daniel M. Shanley ¶¶ 7-10. In doing so, Shanley had confidential communications with Shapiro, which were made for purposes of giving legal advice to the Counsel. *Id.* ¶¶ 8-9. As a result, those communications are plainly protected by the attorney-client privilege, which the Council holds and has not waived. *See, e.g.*, *Weintraub*, 471 U.S. at 349; *Chen*, 99 F.3d at 1502; *Ferrell*, 2007 WL 2220213, at *4. It was therefore improper for Shapiro to disclose privileged information with respect to those bargaining agreements—which Shapiro mischaracterizes but discusses—on page 2, lines 23 to 25 of her motion ("and that" through "membership"), Mot. at 2, and they should be stricken.

## CONCLUSION

For all these reasons, Shapiro's motion to dismiss should be denied, and Plaintiffs' motion to strike privileged material should be granted.

Dated this 25th day of April, 2022

*/s/ R. Kennon Poteat III*
R. Kennon Poteat III
Kaitlin J. Beach
WILLIAMS & CONNOLLY LLP

Daniel M. Shanley
SHANLEY, A Professional Corporation

OPPOSITION TO MOTION TO DISMISS & MOTION TO STRIKE
2:22-cv-00245-JHC
14
Williams & Connolly LLP
680 Maine Avenue SW
Washington, DC 20024
(202) 434-5000

Attorneys for Plaintiffs UNITED
BROTHERHOOD OF CARPENTERS
AND JOINERS OF AMERICA and
PACIFIC NORTHWEST REGIONAL
COUNCIL OF CARPENTERS

OPPOSITION TO MOTION TO DISMISS & MOTION TO STRIKE
2:22-cv-00245-JHC                                    15

Williams & Connolly LLP
680 Maine Avenue SW
Washington, DC 20024
(202) 434-5000