UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, an unincorporated association, and PACIFIC NORTHWEST REGIONAL COUNCIL OF CARPENTERS, an unincorporated association,<br><br>    Plaintiff[sic],<br><br>v.<br><br>EVELYN SHAPIRO, an individual,<br><br>                            Defendant. | Case No.: 2:22-cv-00245-TSZ<br><br>DECLARATION OF EVELYN SHAPIRO |

I, EVELYN SHAPIRO-O'CONNOR, make the following statement under oath subject to penalty of perjury under the laws of the United States and the State of Washington:

1.1    My name is Evelyn Shapiro-O'Connor. I am over the age of eighteen and am competent to testify in these proceedings. My testimony is based upon my personal knowledge, and my education, training, and experience.

1.2    I make this statement in support of my motion to dismiss the Complaint filed against me by the United Brotherhood of Carpenters ("UBC") and the Pacific Northwest Regional Council of Carpenters ("Council").

1.3    I seek immunity from their lawsuit filed for the improper purposes of silencing me and to prevent me from advocating for my rights and the rights of my former brethren members and former staff members who believed, as I did, in the values of union representation.  Since I have been expelled from both the UBC and the Council under false pretenses and a sphere of corruption, I have sought redress from the National Labor Relations Board and have otherwise communicated my observations and concerns about corruption at the highest levels regarding Dan Shanley and Doug McCarron undermining what was supposed to be representation of the people by the people rather than the autocracy it has become through the UBC taking over the region via trusteeship.  I intend to cooperate fully with the Department of Labor and any other agency charged with investigating the corruption I observed at the UBC and by Dan Shanley and Doug McCarron.

1.4    I have dedicated twenty-one years to the union construction industry.  I began as a tradeshow specialist, then became an apprentice carpenter, journey level carpenter, foreman, union representative, labor compliance/wage theft investigator, education director. I worked in collaboration with law enforcement in multiple states, including Washington state, to successfully incarcerate and remove contractors who stole hundreds of thousands of dollars from union members and taxpayers.  I worked closely with the Attorneys General offices and state and federal agencies in multiple states and provided sole evidence to win cases against fraudulent businesses. I was even deputized with the Seattle Police Department to coordinate a court sanctioned undercover operation to catch a criminal contractor who defrauded tax payers and workers on publicly funded prevailing wage jobs.  I coordinated civil and criminal lawsuits on behalf of

workers in wage theft cases, resulting in the award of millions of dollars to victimized workers. Within the union, I was elected the Union's Vice President, the President, and ultimately Executive Secretary/Treasurer (principal officer) of the 6 states Council.  Union members twice elected me their principal officer. The last time I ran for office just 18 months ago, I ran unopposed for the first time in our Council's history.   I became the first woman in the United States to serve as the principal officer for a Carpenters' Union Council, in one of the largest construction unions in the country.  At the time of the UBC ouster, I was the highest-ranking elected woman in the Carpenter's Union in the United States. I had been recruited by the UBC international office to be a leadership instructor at their flagship training center, I was similarly recruited by the UBC to serve as a top coordinator for North American and district conventions, conferences, educational workshops, and a campaign coordinator for General President McCarron's election campaigns. I devoted countless hours working out of town and working long days and weekends away from my family, in the service to Carpenters Union members, and I was pursued by UBC international officers and high ranking staffers for multiple positions working for the UBC international full time.

1.5   In 2021, my working relationship with the UBC disintegrated when I supported Council staff efforts to unionize after their successful NLRB election, over the objections of Dan Shanley and Doug McCarron, and when I would not sign negotiated agreements without member input and when I objected to Doug McCarron's pressure to let him sign it without a member vote.  I was running the Council from the bottom up, involving members in collaborative decision making. Shanley and McCarron did not like it. In fact, McCarron did not like that my membership participated in the bargaining process and voted for their contract, and they consistently urged me to take the vote away from the membership or to "let us [McCarron] just sign it" because McCarron

DECLARATION OF EVELYN SHAPIRO
ECF CASE NO. 2:22-CV-00245-TSZ - 3 of 10

said he told me that he felt that the membership did not understand the industry well enough to vote effectively on their contracts.

1.6     This lawsuit comes before you to punish me for my union advocacy and for exercising my rights to report the UBC corruption I witnessed to the agencies authorized to do something about it, such as the NLRB, in the case of McCarron and Shanley directing me to "bargain the staff union contract to impasse" over my objections and concerns.

1.7     With regard to my communications with Dan Shanley, he was not my personal attorney. He was not the primary attorney I retained in my capacity as Council Executive Secretary/Treasurer for the Council.  In my position as Council Executive Secretary/Treasurer, I held the highest position in the Council.  I did not consent to retaining Dan Shanley with respect to the matters at issue in this litigation that he describes as "corruption and mismanagement at the Council and the administration of Council affairs, including labor and employment issues."  I had retained separate counsel, Matthew Malhmsheimer, who was advising the Council, and had been for many years, even prior to my holding the principal office.

1.8     I knew Dan Shanley represented the UBC.  In that capacity as the UBC's lawyer, he would communicate the UBC's position on issues at the Council.  I did not consider his communications with me confidential attorney-client communications.  For the most part, Dan Shanley acted as if he was the alter ego of the UBC dictating its position on matters and directing how he thought I should lead the Regional Council.  I did not consider him to be giving me legal advice every time he spoke to me.  Most of the time he was telling me what the UBC's position (or Doug McCarron's opinion) was on choices I was making, or how occurrences such as how NLRB protected staff union organizing "looked bad for me" or "would be bad for the UBC's decision making structure"; he was not giving me legal advice. In fact, when he attempted to advise me on matters related to

DECLARATION OF EVELYN SHAPIRO
ECF CASE NO. 2:22-CV-00245-TSZ - 4 of 10

staff union organizing that I had not requested, I challenged his legal arguments, reminding him that thousands of union staff are organized throughout the nation in other unions, and he would back down, saying that he was "not an expert on union staff organizing or the legalities pertaining." Consistently Shanley and McCarron were directing me to take control out of the hands of union members, and advocate against union organizing, which I typically thought was heavy handed and inappropriate.

1.9     For example with regard to page 2 lines 18-22 of my Motion to Dismiss wherein I reference UBC's desire that I oppose Council staff organizing, my conversations were not limited to conversations with Dan Shanley.  I spoke to Doug McCarron and others about this at UBC.  None of the conversations involved a request for legal advice, though I did want McCarron's support for my decisions because he was clearly directing me in the opposite direction from that which I wanted to lead.  The upper leadership at the UBC were trying to tell me how to do my job, because they were afraid of the resulting impacts on their power structure and I happened to disagree with their approach. Discussions about how to lead and how to exercise control was not a subject the Council was seeking legal advice from Shanley, nor was it in McCarron's purview to direct me on this and other matters.

1.10    With regard to Shanley's Declaration wherein he says he was giving legal advice to the Council regarding certain collective bargaining agreements that I reference on page 2 lines 23-25 of my motion, I disagree that he was giving legal advice.  He was telling me what McCarron wanted me to do. When staff successfully voted for their union contract, McCarron told me that it needed just me and Shanley at the bargaining table and that our plan must entail bargaining to impasse against the unionized staff. In fact, Shanley was typically reticent to provide clear advice (even when asked) and would rarely provide legal advice in writing, even when asked. On the

DECLARATION OF EVELYN SHAPIRO
ECF CASE NO. 2:22-CV-00245-TSZ - 5 of 10

occasion that my Contract Administrator asked Shanley for advice on strike-able contractors during our 2021 strike, Shanley provided conflicting and convoluted advice that forced a public change of direction on the strike. (McCarron had directed me to engage in the strike in 2021 because according to him, my union members needed to "feel some pain" and "have some skin in the game." It is phenomenally difficult to lead members in a strike when the stated goal by upper leadership is to "teach members a lesson.") Changing direction on the strike-able contractors published, forced me to take a public fall with my membership, when they perceived that I was giving into contractor demands or lessening the effectiveness of the strike. In reality, we were following a strategy that Shanley initially directed, then he would change his mind, which, understandably resulted in the membership mistrusting their leadership when I was forced to publicly backtrack based on UBC interferences. Actions like this from Shanley did not make me feel motivated to seek any legal advice from Shanley, though he often touted himself as the "best labor lawyer in the country" and he was concerned that we were not using his legal services more. In fact, when he and McCarron were originally trying to setup Hutchins to take the fall for any negative press the Council had endured that year, Shanley asked me to corroborate the accusation of Dan Hutchins saying that he (Shanley) was "too expensive." I told Shanley that I did not recall Hutchins saying that Shanley was too expensive, but that I felt that he (Shanley) was oftentimes too expensive for the value he provided and that I tried to reserve only hiring Shanley for when I needed "an asshole approach," for example, when I requested help to put pressure on a non-union contractor that refused to bargain in good faith with the Carpenters Union to represent a new tradeshow bargaining unit. Regarding the members' collective bargaining agreements and contract votes I understood I could sign the agreements or delegate that to McCarron, but I did not want to delegate my authority, and I said so.  My beliefs about member participation in approving

DECLARATION OF EVELYN SHAPIRO
 ECF CASE NO. 2:22-CV-00245-TSZ - 6 of 10

negotiated agreements conflicted with UBC leadership's approach and I was admonished on several occasions by Shanley and McCarron for supporting the Council's practice that members be given the opportunity to vote on their contract.  The UBC wanted more control.  I wanted member input.  I did not fear a down vote by the membership, it was important to me that the members had the opportunity to vote and I felt confident in my ability as a leader to engage the membership.

1.11  I understand Dan Shanley thought his knowledge of the law gave him superior expertise in making day to day management decisions, and while I felt obliged to listen given his power and position within the UBC, I did not consider his input on how I should exercise my power to be legal advice or confidential, as I was the duly elected leader of the Council.  I often discussed what direction Shanley told me the UBC wanted me to take with the Directors and other leadership members of the Council so that we could make our own decisions about the direction of the Council. We were distinct entities, both in practice, and under federal law. We occasionally employed Shanley for legal matters, but certainly not all legal matters, and not on any of the information he seeks to hide in this lawsuit.

1.12     Since the initiation of the lawsuit, I consider my communications with Dan Shanley to be integral to my defense.  His communications with me are evidence of the UBC's motives to discredit me with the false allegations contained in the complaint.  I did not ask for or desire votes to be rigged or tampered with for any reason.  I learned that Shanley and McCarron reportedly gave instructions to Dan Hutchins to rig votes in a 2018 contract vote.  When they tried to blame all negative press the Council was experiencing, including the Allianz losses, on Dan Hutchins in 2021, I defended Dan Hutchins on those points and also made them aware that he had reported being instructed to rig votes by Shanley and McCarron's office.  When I was made aware that

there had potentially been vote rigging in 2020, I did not condone it, and I made sure that suspect votes were not counted. That was my direction, not the direction of the UBC, or anyone else. By that time, Shanley and McCarron were already pushing towards trusteeship to take control away from the Region. They were looking for justification to put something financial in the initial letter to the Department of Labor to ensure the Department would agree to supervision. As you can tell from the Complaint, ultimately vote rigging became part of that narrative. What is not included in the Complaint, but was included in the Trusteeship document are allegations by the UBC against me of money mismanagement, regarding an investment fund in an ERISA trust that experienced a large loss. Shanley was again admonishing me for the investment loss, admitting that while the loss was not my fault, that it "looked bad" for the Council and the UBC, and that the UBC had to protect itself from "looking bad." Shanley further admonished me for what he felt would prove to be an ineffective and frivolous lawsuit I had filed on behalf of my membership to recover funds for their benefits. Since the time of my ouster, the lawsuit that I filed over Shanley's objections and criticism has returned over $100 million dollars for my former members, an astounding result for which Shanley and McCarron have since publicly taken credit.

1.13    Dan Shanley has falsely accused me of rigging votes and corruption when the genesis of vote rigging and corruption comes from his actions and the actions of the UBC. He and Doug McCarron are primarily interested in amassing power at the national and North American level. The scope of their power derives from their continued control over union members, and particularly Council staff members. If union members working for the Carpenters union elect to unionize themselves, UBC direction and control weakens over the money and decision making on a local, national, and international level. The control is no longer direct from members. This is a system that McCarron has worked hard to implement over the last 25 years. The system is his

legacy. A staff union deeply threatens that multi-decade built legacy to centralize control and decision making. Shanley was specifically concerned that unionized staff members might exert power over the international UBC pension. The degree to which Dan Shanley is controlling the narrative and distorting the truth is frightening and alarming.

1.14    It should not go unsaid that I have felt directly threatened by comments made to me by Doug McCarron, such as "there would be blood on the floor if anyone called me a unionbuster" after McCarron directed me regarding staff organizing efforts, saying to me, "it sounds bad but you gotta crush this." After he ousted my predecessor, Doug Tweedy, McCarron told me that if anyone talked to him the way he (McCarron) had spoken to Tweedy, "there would have been blood on the floor." It should not go further unsaid that I have felt directly threatened by comments made to me by Dan Shanley like "Keep your fucking mouth shut. Don't you dare cross Doug. It's lethal. Don't you dare cross Doug. It'll be lethal" when I attempted to ask questions about what a Trusteeship would entail, and inquired as to how I could learn about the impacts of a potential Trusteeship on the organization and on my union members.

1.15    The unverified Complaint contains a myriad of false accusations that are intended to discredit me so that my observations of corruption and illegal acts at UBC are not heard or considered.  I assert my right to speak openly to the National Labor Relations Board, Department of Labor, and other regulators or investigators as well as to defend against this frivolous lawsuit.

1.16    I respectfully request the Court grant me immunity and award penalties fees, and costs against plaintiffs and their attorney Dan Shanley.

DATED this 5th day of May, 2022 at Burien, WA.

*Evelyn Shapiro-O'Connor*
Evelyn Shapiro-O'Connor

DECLARATION OF EVELYN SHAPIRO
ECF CASE NO. 2:22-CV-00245-TSZ - 9 of 10

CERTIFICATE OF SERVICE

I, Bayley Briscoe, hereby certify as follows:

I am over the age of 18, a resident of Pierce County, and not a party to the above action. On May 5th, 2022, I electronically filed the above DECLARATION OF EVELYN SHAPIRO, with the Clerk of the Court using the Pacer CM/ECF e-filing system which will send notification of such filing to all counsel of record who receives CM/ECF notification.

I certify under penalty of perjury under the laws of the State of Washington that the above information is true and correct.

DATED this 5th day of May, 2022 at Fircrest, Washington.



Bayley Briscoe, Legal Assistant