1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

UNITED BROTHERHOOD OF
CARPENTERS AND JOINERS OF
AMERICA, an unincorporated
association, and PACIFIC
NORTHWEST REGIONAL
COUNCIL OF CARPENTERS, an
unincorporated association,

    Plaintiff[sic],

v.

EVELYN SHAPIRO, an individual,

                Defendant.

Case No.: 2:22-cv-00245-JHC

EVELYN SHAPIRO'S MOTION FOR
SUMMARY JUDGMENT

NOTE ON MOTION CALENDAR:

February 17, 2023

## INTRODUCTION

Evelyn Shapiro moves for summary judgment dismissal of plaintiffs' unverified Complaint

because plaintiffs have pled a frivolous complaint that contains false allegations for improper

reasons.  The Complaint is frivolous because plaintiffs allege a cause of action the 9th Circuit has

decided is not implied by statute as alleged, and because plaintiffs fabricated the factual allegations

set forth in its Complaint.  Plaintiffs, an international and a regional carpenter union, urge this

Court to incorrectly interpret *Traweek,* 867 F. 2d 500, 506, (9th Cir. 1989).  The *Traweek* court

EVELYN SHAPIRO'S MOTION FOR SUMMARY JUDGMENT
ECF Case No. 2:22 -cv-00245- - 1 of 19

affirmed there is no implied right of action under 29 U.S.C. § 501 for a union to sue itself for breach of a fiduciary duty.  Thus, plaintiffs have no viable cause of action.  Plaintiffs' abuse of process by falsifying factual allegations provides additional grounds for the Court to reject plaintiffs' invitation to impute a cause of action where none has previously been recognized by the 9th Circuit.  Federal jurisdiction is not properly invoked to sort through or interfere with internal union power struggles, particularly fabricated ones.   Plaintiffs' allegations that Shapiro, formerly the Regional Council's Executive Secretary-Treasurer, directed Dan Hutchins to fix votes in 2019 on a tentative agreement, manipulated the vote on allocation of increased wages referenced as "Option 2", and had subordinate Juan Sanchez fix the votes on WWA TA#3 in 2021 to achieve purported member approval of a negotiated bargaining agreement has no basis in reality. Plaintiffs' Complaint is fraught with histrionics and false statements that have been discredited through discovery.  There was no independent forensic audit conducted, and the supposed findings of its hired "outside investigation firm" Lynx Insights, do not link Shapiro nor Sanchez to any rigged votes.  There are no texts, no e-mail, no messages, no meta-data, no statements nor plausible history from anyone that support plaintiffs' allegations.  Importantly, Dan Hutchins readily admits Evelyn Shapiro never told him to "fix the fucking vote" in 2019 as alleged in quotes in the Complaint.  These unsubstantiated allegations were similarly broadcast in quotes and print by McCarron and Shanley to approximately 30,000 people as part of a smear campaign against Shapiro for refusing unethical and anti-union direction from McCarron and Shanley that she must "crush the [staff] union" and that she must forcibly "bargain the [staff] agreement to impasse" and that Shapiro should furthermore sign the WWA membership contract agreement without allowing them to vote at all. Yet, plaintiffs have never corrected their errors.   In reality, Hutchins states in his own testimony that he fixed the 2019 vote without direction from Shapiro.   He opted on his

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph

own against doing the necessary and harder work of educating members and chasing legitimate votes and instead cast votes himself to gain purported member approval of a contract he controlled and negotiated.  The Complaint in this action is but one of a series of specious lawsuits fashioned by UBC counsel Daniel Shanley to discredit and silence individuals like Evelyn Shapiro, who refused to bow down to UBC machinations to control the Regional Council to amass all power and resources at the international level.

## FACTUAL BACKGROUND

After ousting Evelyn Shapiro from her top leadership role as Executive Secretary – Treasurer of Pacific Northwest Regional Council of Carpenters, UBC's attorney Daniel Shanley, filed the unverified Complaint in this case on March 2, 2022.[1]  The Complaint alleges that the Regional Council's Director of Contract Administration Dan Hutchins rigged a ratification vote for the Eastern Washington Master Labor Agreement in 2019 at the direction of Evelyn Shapiro.[2]  The allegation is very specific to include in quotes a statement attributed repeatedly to Evelyn Shapiro to the effect that she allegedly told Hutchins to "fix the fucking vote."[3]  But, Evelyn Shapiro never made that statement.[4]  In fact, Hutchins further made the following statements about Shapiro under oath: She gave no such direction.[5]  She was well reputed to be honest and committed to union member representation.[6]  At the time the vote was taken on the agreement, Shapiro had given no direction to Hutchins to get an affirmative vote on the labor agreement.[7]  Shapiro was not the lead negotiator, Hutchins was chairperson for that venue.[8]

---

[1] Dkt. 19 (Shapiro 5/5/22 Dec.) and Dkt. 1.
[2] Dkt. 1 at 1 (Complaint).
[3] Dkt. 1 at 1.
[4] Dkt. 54  (Mell 1/26/23 Dec. at Ex. A (Dan Hutchins Dep. at 42-43, 83-84.); Dkt. 53 (Shapiro 1/26/23 Dec. at 1).
[5] Dkt. 53 (Shapiro 1/26/23 Dec. at 1) and Dkt. 54 at Mell 1/26/23 Dec. Ex. A (Hutchins Dep. at 42 – 44, 46 "Q: Did EST Shapiro ever instruct you to manipulate votes? A: No.")
[6] Dkt. 54 (Mell 1/26/23 Dec. Ex. A (Dan Hutchins Dep. at 55.)
[7] Dkt. 54 (Mell 1/26/23 Dec. Ex. A (Dan Hutchins Dep. at 39.)
[8] Dkt. 54 (Mell 1/26/23 Dec. Ex. A (Dan Hutchins Dep. at 28.)

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

30

31

32

33

Shapiro never told Hutchins what her position was on the vote prior to him updating her on the vote.[9]  Hutchins was the person responsible for setting up all ratification votes and managed the voting software, not Shapiro.[10]

Hutchins did not align himself with Shapiro or her management team.[11]  Shapiro had taken the top role at the Council over him.[12]  He did not vote for her.[13]  Under her leadership, Shapiro had to correct his sexist behaviors more than once.[14]  Hutchins had one foot "out the door" when Shapiro took over.[15]  Shanley and the UBC incentivized Hutchins' to fault Shapiro for their own purposes.  First, Shanley threatened Hutchins to force his resignation.[16] Later Shanley volunteered legal representation for Hutchins in this matter and otherwise chose not to name him in a civil lawsuit like the lawsuits Shanley crafted against Sanchez and Shapiro.[17]  Hutchins cooperated with Shanley when Shapiro and Sanchez did not.[18]

Plaintiffs' attorney Shanley fabricated the statement "fix the fucking vote" attributed to Hutchins.[19]  Shanley and the UBC have been repeating that mantra to tarnish Shapiro because she challenged Shanley's directives and that of the UBC when she was the top decision maker for the Regional Council.[20]  Dan Hutchins has testified under oath at deposition that he rigged the 2019 vote, but Shapiro's comment to him was substantively distinct from what Shanley pled.[21]

---

[9] Dkt. 54 (Mell 1/26/23 Dec. Ex. A (Dan Hutchins Dep. at 28.)
[10] Dkt. 54 (Mell 1/26/23 Dec. at Ex. A (Dan Hutchins Dep. at 29 – 30, 38, 46-47, 118.)
[11] Dkt. 54 (Mell 1/26/23 Dec. at Ex. A (Dan Hutchins Dep. at 35.)
[12] Dkt. 54 (Mell 1/26/23 Dec. at Ex. A (Dan Hutchins Dep. at 30.)
[13] Dkt. 54 (Mell 1/26/23 Dec. at Ex. A (Dan Hutchins Dep. at 30.)
[14] Dkt. 54 (Mell 1/26/23 Dec. at Ex. A (Dan Hutchins Dep. at 31, 32, 33.)
[15] Dkt. 54 (Mell 1/26/23 Dec. at Ex. A (Dan Hutchins Dep. at 35.)
[16] Dkt. 54 (Mell 1/26/23 Dec. at Ex. A (Dan Hutchins Dep. at 6-7.)
[17] Dkt. 54 (Mell 1/26/23 Dec. at Ex. A (Dan Hutchins Dep. at 7, 15, 20, 21.)
[18] Dkt. 54 (Mell 1/26/23 Dec. at Ex. A (Dan Hutchins Dep. at 11); Dkt. 17 (Sanchez Dec.); Dkt. 19 (Shapiro Dec.)
[19] Dkt. 1 at 1 and 18 (Complaint).
[20] Dkt. 19 (Shapiro 5/5/22 Dec. at 3-4); Dkt. 53 (Shapiro 1/26/23 Dec at 2.); Dkt. 54 Mell 1/26/23 Dec. at Ex. A (Dan Hutchins Dep. at 57-58, 60, 65-66.)
[21] Dkt. 54 Mell 1/26/23 Dec. at Ex. A (Dan Hutchins Dep. at 26-27, 43.)

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph

Hutchins acted on his own.[22]  Hutchins admitted that he updated Shapiro on the 2019 vote and she commented "It better fucking pass."[23]  Shapiro was well reputed to make construction vernacular statements to this effect to her team when a vote was being taken as part of her direction and rallying call to her team to go out and educate membership based on the bargaining team's recommendation and chase votes, not fabricate them.[24]  Hutchins decided not to reach out to them after speaking with Shapiro to chase the necessary votes.[25]  Instead, he voted himself apparently to accomplish the objective of an affirmative vote without having to do the real work to obtain the votes legitimately after hours.[26]  Hutchins admitted that Shapiro never instructed him to manipulate votes.[27]  Hutchins came up with his method all on his own.[28] Hutchins exploited a flaw in the software his team acquired that he knew about.[29]  He voted using member numbers to log into the system.[30]  Members did not have secret passwords to log in to vote.[31]  Hutchins had access to the member identification numbers that enabled him to vote for them.[32]  Shapiro was not involved and knew nothing about Hutchins fixing the vote at the time.[33]

In the Complaint, plaintiffs allege upon "information and belief" that Shapiro also rigged a second vote when she "turned to her book of dirty tricks" and fixed the survey so Option 2 would win."[34]  This vote concerned allocations of increased pay.  Plaintiffs have never identified any "book of dirty tricks."[35]  There is not one.  It is another Shanley fabrication.  Plaintiffs have never

---

[22] Dkt. 54 Mell 1/26/23 Dec. at Ex. A (Dan Hutchins Dep. at 44, 47.)
[23] Dkt. 54 Mell 1/26/23 Dec. at Ex. A (Dan Hutchins Dep. at 44.)
[24] Dkt. 53 (Shapiro 1/26/23 Dec. at 2.)
[25] Dkt. 54 Mell 1/26/23 Dec. at Ex. A (Dan Hutchins Dep. at 62, 110-112.)
[26] Dkt. 54 Mell 1/26/23 Dec. at Ex. A (Dan Hutchins Dep. at 44, 48, 50, 61 111-112.)
[27] Dkt. 54 Mell 1/26/23 Dec. at Ex. A (Dan Hutchins Dep. at 46.)
[28] Dkt. 54 Mell 1/26/23 Dec. at Ex. A (Dan Hutchins Dep. at 51.)
[29] *Id.*
[30] Dkt. 54 Mell 1/26/23 Dec. at Ex. A (Dan Hutchins Dep. at 47-48, 50 - 51.)
[31] Dkt. 54 Mell 1/26/23 Dec. at Ex. A (Dan Hutchins Dep. at 48.)
[32] Dkt. 54 Mell 1/26/23 Dec. at Ex. A (Dan Hutchins Dep. at 118.)
[33] Dkt. 54 Mell 1/26/23 Dec. at Ex. A (Dan Hutchins Dep. at 46, 75.)
[34] Dkt. 1 at 8.
[35] Dkt. 54 Mell 1/26/23 Dec. at Ex. B (Plaintiffs Answers to Rog. 19 and RFP No. 79.)

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph

identified any evidence showing the survey regarding pay allocation was ever manipulated.[36]  The allegation is completely frivolous.

Similarly, plaintiffs make the false claim that Shapiro had Juan Sanchez manipulate the vote on WWA TA#3 in August 2021.[37] That too is plainly false.  Shapiro did not have Sanchez or anyone else manipulate the WWA TA#3 vote.[38]  During the vote, apparently staff learned the voting software was reporting suspect votes as if members had voted when they had not.[39]  The software system was not secure.[40] The reported discrepancy was repeated votes from the same IP address.[41] When staff became concerned, staff contacted Shapiro who instructed staff to make sure any suspect votes were not counted.[42]  She was the person who ensured the integrity of the vote, she never faked voter approval.[43]

Shapiro retained LMG Security, forensic technology experts, to debunk plaintiffs' accusations.[44]  LMG reviewed the "Investigative Report" referenced in the Complaint from Lynx Insights and Investigations ('Lynx") and other materials such  as  election data and documents related to the three forensic artifacts Lynx cited in its report obtained in discovery.[45]  LMG found conclusively that none of plaintiffs' so called evidence supported the allegations in the Complaint.[46]  There was no evidence whatsoever about the vote rigging Dan Hutchins admittedly undertook on his own.[47]  There was no evidence whatsoever that any votes were manipulated on

---

[36] Dkt. 54 Mell 1/26/23 Dec. at Ex. B (Plaintiffs Answers to Rog 19 and RFP No 80.)
[37] Dkt. 1 at 8 (Complaint.)
[38] Dkt. 17 (Sanchez Dec.) and Dkt. ** (Shapiro 1/26/23 Dec.)
[39] Dkt. 54 Mell 1/26/23 Dec. at Ex. C (LMG Report.)
[40] Dkt. 54 Mell 1/26/23 Dec. at Ex. A (Dan Hutchins Dep. at 121-122.)
[41] Dkt. 54 Mell 1/26/23 Dec. at Ex. C (LMG Report at 3-4.)
[42] Dkt. 54 Mell 1/26/23 Dec. at Ex. A (Dan Hutchins Dep. at 104, 129.)
[43] Dkt. 54 Mell 1/26/23 Dec. at Ex. A (Dan Hutchins Dep. at 101-102, 104.)
[44] Dkt. 54 Mell 1/26/23 Dec. at Ex. C (LMG Report at 2.)
[45] Dkt. 54 Mell 1/26/23 Dec. at Ex. C (LMG Report at 2.)
[46] Dkt. 54 Mell 1/26/23 Dec. at Ex. C (LMG Report at 10.)
[47] Dkt. 54 Mell 1/26/23 Dec. at Ex. A (Dan Hutchins Dep. at 46, 50-51)

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph

the "Option 2" survey.[48]  And finally, there was no evidence that Juan Sanchez manipulated any votes.[49]  Lynx opined that multiple votes came from a Vancouver IP address on WWA TA#3 based solely upon content supplied to it by Shanley.[50]  Lynx never verified the content Shanley provided was original.[51]  Markers commonly used to compare original data to supposedly duplicated data could not be scrutinized because Lynx reviewed records provided to it by Shanley rather than the original data.[52]  In addition to Lynx reviewing suspect data sets, Lynx omitted findings that show Sanchez could not be responsible for the suspect votes.  LMG points out that to produce the data Lynx referenced in its report, three people in three separate locations would have to have been entering data at a rate of 1 – 4 per minute from August 4, 2021 at 5:10 pm to August 5, 2021 at 4:32 p.m.[53]  Juan Sanchez could not be responsible for the suspect findings.[54]  Additionally, plaintiffs' complaint alleges duplicate votes were identified while at the same time describing a voting system that prohibited duplicate votes in that members complained they could not vote when attempting to do so.[55]  Given the technology, the factual allegations cannot both be true.[56]  The system either tolerated duplicity or it did not.[57]  LMG affirms the factual allegations within plaintiffs' Complaint are an impossibility and therefore patently false.[58]  Plaintiffs targeted Juan Sanchez erroneously when asserting that Sanchez' had an IP address that matched the IP address from Vancouver linked to suspect votes.[59]   Sanchez did not live in Vancouver.[60]  The IP address

---

[48] Dkt. ** Mell 1/26/23 Dec. at Ex. A (Dan Hutchins Dep. at 100-101.)
[49] Dkt. ** Mell 1/26/23 Dec. at Ex. C (LMG Report.)
[50] Dkt. 1 at 10-11.
[51] Dkt. 54 Mell 1/26/23 Dec. at Ex. B (Plaintiffs Answers to Rog 19 and RFP No 80.)
[52] Dkt. ** Mell 1/26/23 Dec. at Ex. C (LMG Report at 3 "*The information in this report is based upon records provided by the client and has not been independently verified by Lynx.*"
[53] Dkt. 54 Mell 1/26/23 Dec. at Ex. B (Plaintiffs Answers to Rog 19 and RFP No 80.)
[54] Dkt. 54 Mell 1/26/23 Dec. at Ex. C (LMG Report at 4).
[55] Dkt. 54 Mell 1/26/23 Dec. at Ex. C (LMG Report at 4).
[56] Dkt. 54 Mell 1/26/23 Dec. at Ex. C (LMG Report at 5).
[57] Dkt. 54 Mell 1/26/23 Dec. at Ex. C (LMG Report at 5).
[58] Dkt. 54 Mell 1/26/23 Dec. at Ex. C (LMG Report at 5).
[59] Dkt. 54 Mell 1/26/23 Dec. at Ex. B (Plaintiffs Answers to Rog 19 and RFP No 80).
[60] Dkt. 17 at 4

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph

identified was not his.[61]   LMG explains how the IP address does not implicate Sanchez.[62]   The IP

address does not identify an individual user.[63]   Various individuals may use the same IP address.[64]

The IP address does not on its own identify an individual user.[65]   In short, the Complaint has no

merit and should be dismissed outright.

## ARGUMENT

### A.    Immediate Dismissal Warranted for Lack of Material Facts or Viable Cause of Action

A moving party may be granted summary judgment where there are no genuine issues of

material fact applicable to any recognized cause of action.[66]   Here the facts are fabricated and there

is no viable legal theory upon which this case may proceed.   Factual disputes that are irrelevant or

unnecessary will not be counted.[67]   The mere existence of some alleged facts between the parties

is insufficient to defeat an otherwise properly supported motion for summary judgment.[68]

Implausible factual allegations or hypotheticals may be disregarded.[69]   The nonmoving party may

not rely on the mere allegations in the complaint, but rather must oppose the motion with specific

facts showing there is a genuine issue for trial.[70]   It is insufficient for the non-moving party to

simply state that it will discredit the moving party's evidence at trial, but rather must produce

"significant probative evidence tending to support the complaint."[71]   Whether a fair-minded jury

could return a verdict for the plaintiff on the evidence presented requires more than the mere

---

[61] Dkt. 54 Mell 1/26/23 Dec. at Ex. C (LMG Report at 6-8); and Sanchez Dec.
[62] Dkt. 54 Mell 1/26/23 Dec. at Ex. C (LMG Report at 6-8).
[63] Dkt. 54 Mell 1/26/23 Dec. at Ex. C (LMG Report at 6-7).
[64] Dkt. 54 Mell 1/26/23 Dec. at Ex. C (LMG Report at 6-7).
[65] Dkt. 54 Mell 1/26/23 Dec. at Ex. C (LMG Report at 6-7).
[66] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).
[67] *Id.*
[68] *Id.*
[69] *Moonbug Entertainment Limited v. Babybus (Fujian) Network Technology Co.,* Ltd, Case No. 21-cv-06536-EMC *7 2022 WL 580788 (N.D. Cal. 2022).
[70] T.*W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n.,* 809 F.2d 626, 630 (9th Cir. 1987).
[71] *Id.*

EVELYN SHAPIRO'S MOTION FOR SUMMARY JUDGMENT
ECF Case No. 2:22 -cv-00245- - 8 of 19

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph

scintilla of evidence in support of plaintiff's position; there must be evidence on which the jury could reasonably find for the plaintiff.[72]   The more implausible the claim or defense asserted by the non-moving party, the more persuasive its evidence must be to avoid summary judgment.[73]

Plaintiffs may not survive summary judgment because plaintiffs cannot set forth plausible material facts to support any viable theory pled.   Any damning facts alleged in plaintiffs' Complaint have been proven false.   With regard to votes manipulated in 2019, Shapiro did not give the alleged instruction.   She knew nothing about Hutchins' improprieties.   He acted on his own.   With regard to the "Option 2" vote on allocation of monies to benefits, plaintiffs never had any facts of that vote being manipulated at all.    Finally, with regard to suspect votes on TA#3, Shapiro and Sanchez had nothing to do with it.   Shapiro gave clear instructions to disregard any duplicated or suspect votes.    In fact, she followed up with subsequent direction in writing to the Contracts Department, to ensure better security for the subsequent WWA contract votes. There are no facts that prove Shapiro instructed Sanchez to duplicate votes and there are no facts showing Sanchez duplicated votes or that the software would even allow it.   Plaintiffs have fabricated the quotes of their key witness and fabricated claims for the improper purposes of punishing Shapiro for refusing unethical direction by McCarron and Shanley to bust the staff union, forcibly bargain the staff contract to impasse, and sign the WWA membership contract agreement without allowing them to vote at all.   On the legal theory, plaintiffs rely upon a cause of action unrecognized in the 9th Circuit.   The case should be dismissed, and sanctions awarded to Shapiro.

**B.     9th Circuit Does not Recognize An Implied COA Under Section 501**

---

[72] *Id.*
[73] *Id.*

EVELYN SHAPIRO'S MOTION FOR SUMMARY JUDGMENT
ECF Case No. 2:22 -cv-00245- - 9 of 19

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph

Plaintiffs' Complaint sets forth one cause of action that the 9th Circuit has rejected as a viable theory of recovery in *Traweek*.[74]  In *Traweek* and other district decisions applying the case hold that Section 501 does not imply a cause of action for breach of a fiduciary duty.[75]  Plaintiffs insist that *Traweek* should be disregarded and limited in its application to subsection (b) claims.[76]  Shapiro contends *Traweek* controls and that unions may not sue union officials for breach of any fiduciary duties under the statute.  The rationale being courts are not proper arbitrators of internal power struggles within unions.  The same logic should be applied here.  Plaintiffs have no viable cause of action under Sec. 501 to sue Shapiro for breach of any fiduciary duty.

In *Bldg Material and Dump Truck Drivers Local 420 v. Traweek*, 867 F.2d 500, 506-07 (9th Cir. 1989), the 9th circuit analyzed LMRDA Section 501 as a whole and held that LMRDA Section 501 did not provide a right of action for unions to sue union officers.[77]  Even if the Court analyzes LMRDA subsubsections (a) and (b) separately, however, LMRDA Section 501(a) does not imply a right of action. When arguing for recognition of an implied cause of action in response to Shapiro's MTD, plaintiffs conflated the duties officers owe unions as institutions with whether Section 501(a) also provides a right of action then presented the court with a string of cases that are not controlling here and where the district court has not actually analyzed the issue.  Whether plaintiffs turn to the same authorities in response here remains to be seen and will be addressed in Reply.  Regardless, it is clear that plaintiffs intend to make new law here on a Complaint replete

---

[74] *Bldg. Material & Dump Truck Drivers, Loc. 420 v. Traweek*, 867 F.2d 500, 508 (9th Cir. 1989); Services *Employees Intern. Union v. National Union of Healthcare Workers*, 598 F.3d 1061, 1071(2010).
[75] *Communications Workers of America, Local 9423 v. Alvarado*, Case No. 22-cv-00365-VKD, 2022 WL 4359224 (N.D. Cal. Sept. 20, 2022) at *5, rejecting 7th, 11th, and District of Columbia decisions that imply a 501 cause of action. *See also, UBC v. Harms*, Case No. 6:22-cv-01477-AA (D. Or. 2022), pending ruling on MTD.
[76] Dkt. 14 at 10 (Plaintiffs' Opp. To MTD.)
[77] *Communications Workers of America, Local 9423 v. Alvarado*, Case No. 22-cv-00365-VKD, 2022 WL 4359224 (N.D. Cal. Sept. 20, 2022) at *5.

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph

with fabrications motivated by self-serving power struggles that this Court should not invite nor encourage the Courts to entertain by disregarding *Traweek* and holding in opposition to *Alvarado*.

Whether a federal statute implies a private right of action where none is expressly stated requires a careful review of the statute's text and structure and requires that the language of the statute evince a clear statutory intent to create that remedy.[78]  Courts are particularly reluctant to overstep their judicial role and create an implied right of action where the statute at issue expressly provides a remedial scheme.[79] The consideration of whether a statute clearly implies a right to sue takes into account four factors, three of which are merely indicia of whether Congress intended to create a private right of action, in spite of neglecting to actually say so.  Congress' intent remains the supreme factor.[80]  First, a court must consider whether the plaintiff is "'one of the class for whose especial benefit the statute was enacted.'"[81]  That determination depends on the overall focus of the statute at issue.[82]  "Statutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons.'"[83]  Even if plaintiffs would benefit from finding an implied right of action, this consideration focuses only on the overall purpose of the statute: Whether it primarily regulates conduct or provides protection for the benefit of a class of persons that includes that the plaintiffs.[84]  Here, although plaintiffs benefit from LMRDA Section 501(a), which creates fiduciary duties that run to the union members, as well as the union institutionally, *SEIU v. Nat'l*

---

[78] *Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001); *L'il Man in the Boat, Inc. v. City and Cnty of San Francisco*, 5 F. 4th 952, 958 (9th Cir. 2021).

[79] *Logan v. U.S. Bank Nat. Ass'n*, 722 F.3d 1163, 1172 (9th Cir. 2013) ("Where a statutory scheme contains a particular express remedy or remedies, "'a court must be chary of reading others into it.'") (quoting *Transamerica Mortgage Advisors (TAMA), Inc. v. Lewis*, 444 U.S. 11, 19 (1979).

[80] *L'il Man in the Boat*, 5 F. 4th at 958.

[81] *Id.* (quoting *Logan*, 722 F.3d at 1170).

[82] *Id.*

[83] *Id.* (quoting *Sandoval*, 532 U.S. at 288-889).

[84] *Id.*(quoting *California v. Sierra Club*, 451 U.S. 287, 294 (1981).

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph

*Union of Healthcare Workers*, 718 F.3d 1036, 1046 (9th Cir. 2013), LMRDA Section 501(a) does not include any language that actually creates any rights in favor of the union. The statute's aim is to regulate the conduct of, *inter alia*, union officers, not to create rights in favor of unions.[85] "'Statutes containing general proscriptions of activities or focusing on the regulated party rather than the class of beneficiaries whose welfare Congress intended to further do not indicate an intent to provide for private rights of action.'"[86]

Second, a statute that does not create a private remedy reflects no intent to create an implied private right of action.[87] "General language or reference to a statute's remedial purpose is not enough to suggest congressional intent to create a remedy; something more is required."[88] LMRDA Section 501(a) does not create any private remedy for an officer's breach of Section 501(a)'s obligations. Rather, it only creates the general requirement that breaching officers are required to "account to the organization for any profit" that the breaching officer has taken in conflict with the officer's fiduciary obligations.[89] That is, LMRDA 501(a) focuses entirely on proscriptions against taking monies in violation of the officer's fiduciary obligations, rather than creating any particular remedy to any stated class of beneficiaries. That absence of any expressly identified remedy in Section 501(a) "presents a significant textual clue that Congress did not intend to confer private rights."[90]

---

[85] *See L'il Man in the Boat*, 5 F. 4th at 958.
[86] *Id.*(quoting *Logan*, 722 F.3d at 1171).
[87] *Id.* at 959.
[88] *Id.*
[89] 29 U.S.C. § 501.
[90] *Id.* at 960.

EVELYN SHAPIRO'S MOTION FOR SUMMARY JUDGMENT
ECF Case No. 2:22 -cv-00245- - 12 of 19

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph

The legislative history of the LMRDA also makes clear that the only avenue for enforcement Congress intended to create in LMRDA Section 501 is set out in Section 501(b), which does not give unions a private right of action to sue in effect itself under that statute.[91]

In order to imply a private right of action under a statute, a civil action must be consistent with the underlying purpose of the statute.[92]  Allowing a union to sue its own speaking agents under LMRDA Section 501(a) would be inconsistent with the underlying purpose of LMRDA Section 501 because unions should be self-regulated, not judicially managed and controlled.  No other corporation is afforded federal jurisdiction to resolve disputed issues over internal controls.  Implying a federal cause of action for unions to sue union officials affords Dan Shanley superpowers to occupy the Courts as he has done nationwide suppressing local leadership with immunity.  Opening the courthouse doors to interfere with union power struggles is one good reason why this Court should not create a cause of action that is not expressed or clearly implied by the text of the statute. Courts authority to imply a cause of action is not generally permitted, irrespective of whether creating one may initially seem warranted in individual cases.[93]

Finally, if enforcement is "traditionally relegated to state law," it is less likely that Congress intended to create another mechanism for enforcement through the federal courts, but just forgot to say so.[94]  In holding that LMRDA Section 501 does not provide a cause of action for unions, the court in *Traweek* specifically considered whether the union would be left without any enforcement remedy were it to hold that LMRDA Section 501 did not provide one.[95]  In that case, the court noted that "the union may sue its former officers either in state court or under other

---

[91] *Traweek*, 867 F.2d at 507; *See also Int'l Longshoremen's Ass'n v. Spear, Wilderman, Borish, Endy, Spear & Runckel*, 995 F. Supp. 564, 570 (E.D. Pa. 1998) (noting that nothing "in the text or legislative history of the LMRDA, reveals a concern for unions themselves having access to federal court").
[92] *L'il Man in the Boat*, 5 F. 4th at 961.
[93] *Sandoval*, 532 U.S. at 286-87.
[94] *See, L'il Man in the Boat*, 5 F. 4th at 962.
[95] *Traweek*, 867 F. 2d at 506.

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph

federal statutory authority."[96]  Here too, plaintiffs have other avenues to pursue its alleged harms, including an action in state court to recover its alleged losses.[97]  "Traweek squarely addressed the issue of "whether a union standing alone can bring a § 501 suit as an initial matter."[98] Thus, the Court need not go further than a review of *Traweek* itself. However, even if the Court *were* to accept that *Traweek's* holding is limited to LMRDA 501(b) rather than LMRDA Section 501 as a whole, applying the analytical framework of *Sandoval* and *L'il Man in the Boat* would obtain the same result: LMRDA Section 501(a) does not imply a private right of action for unions to sue.

The Ninth Circuit Court of Appeals stated the scope of the issue before the court clearly in *Traweek:* "whether a union standing alone can bring a § 501 suit as an initial matter."[99]  The structure of LMRDA Section 501 demonstrates that congress intended LMRDA 501 to be interpreted as a whole, as the court did in *Traweek:* Subsection (a) sets out the fiduciary obligations of union officers and subsection (b) is the enforcement prong of the statute. That LMRDA 501(b) provides a detailed procedure for enforcement of the obligations set out in Section 501(a) implies that Congress *did not* intend for LMRDA 501(a) to provide a right of action for unions because the statutory provision of a specific remedy suggests the intentional omission of other unstated remedies.[100]  Implying a private right of action for unions under LMRDA Section 501(a) would effectively amend, rather than interpret, LMRDA Section 501 in contravention of Ninth Circuit precedent.  Plaintiffs implied cause of statutory cause of action should be rejected outright.

---

[96] *Id.*

[97] *Pugh v. Evergreen Hosp. Medical Center*, 177 Wn.App. 363, 312 P.3d 665 (2013)(Union standing to sue employer on behalf of its members for back pay and injunctive relief); *Washington Trucking Associations v. State Employment Security Department*, 188 Wn. 2d 198, 393 P.3d 761 (2017)(Association challenge to tax assessments); *Newton Ins. Agency & Brokerage, Inc. v. Caledonian Ins. Group, Inc.,* 114 Wn. App. 151, 52 P.3d 30 (2002)(Tortious interference); *Consulting Oversears Mgmt., Ltd. v. Shtikel,*105 Wn. App. 80, 83, 18 P.3d 1144 (2001)(Conversion claim viable against corporate officer.)

[98] *Alvarado*, 2022 WL 4359224 at *5 (quoting *Traweek*, 867 F.2d at 506).

[99] *Traweek*, 867 F.2d at 506.

[100] *Logan v. U.S. Bank Nat. Ass'n*, 722 F.3d at 1172.

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph

**C.      No Plausible Allegations of Any Wrongdoing**

Plaintiffs allege Shapiro breached fiduciary duties owed to the union when she supposedly "turned to her book of dirty tricks" to "fix the fucking vote" on measures that she brought before membership for member input.[101]  Plaintiffs' allegations faulting Shapiro for vote rigging are false. Shanley fabricated them.  Plaintiffs never produced any "book of dirty tricks" because it does not exist.  Shapiro was not dirty.  Shapiro did not direct any subordinate to manipulate votes.  She did not have any knowledge nor suspicion of any subordinate manipulating votes.  Shapiro simply did not do what plaintiffs accuse her of doing.  Plaintiffs' Complaint has no merit and no nexus to reality.  The Complaint alleges Shapiro told Hutchins to "fix the fucking vote."  She did not.   She never said it, nor did she have any knowledge that Hutchins manipulated votes in 2019.   Hutchins concedes both points.  There is no dispute that he acted on his own in 2019 without Shapiro's knowledge.    The comment Hutchins testifies under oath to Shapiro making, "It better fucking pass", to rally for outreach and education does not equate to an instruction to pad votes even though Hutchins now testifies that he chose to interpret her comment that way.   His actions based upon what he admits was one comment were unreasonable and his testimony not plausible.  His opinion about what she meant is not admissible, nor is it relevant.  The material fact is the verbiage Shapiro actually used combined with the absence of any clarification by Hutchins or any conduct by Shapiro that would suggest she intended anything other than for Hutchins to do the legitimate work of the union to chase down votes to support the bargaining committee's recommendation and educate membership.  Hutchins' heard the one sentence – four words from Shapiro and acted without seeking clarification.  Hutchins had no subsequent communication at the time of the vote disclosing his vote rigging to Shapiro.   Hutchins acted on his own, and his misconduct may not

---

[101] Dkt. 1 at 1 and 8.

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph

be attributed to Shapiro.   The Complaint does not allege vicarious liability for Hutchins' vote rigging, nor could it because Shapiro did not know about it.   He did not tell her and the votes he padded were not apparent or discovered, nor should the misconduct have been known by Shapiro. Shapiro was relying upon Hutchins to administer a legitimate vote.   According to Hutchins, she had no reason to believe he would fake it.   Shapiro had no reason to believe Hutchins misinterpreted her. Per Hutchins deposition, he had no history of rigging votes, and neither did she.  Shapiro was a true believer in labor and was seeking member input via voting even though Shanley was telling her to act on her own and sign bargained for agreements without member input, such as the WWA agreement.   She had been legitimately elected twice and was not motivated to fake votes to keep her job. In fact, Shapiro was elected unopposed for the first time in the region's history just one year prior. She was motivated to serve the members and was doing so when opposing the input Shanley gave her to forgo member votes and sign it anyway.  As to the legal standard, there is no legal authority to bring a vicarious Section 501 action to hold the top executive responsible for the intentional misconduct of a subordinate.   Like with section 1983 claims, there is no recognition of vicarious liability against officials in 501claims given the intentional nature of the actionable misconduct.[102]  Shapiro has no liability here.

The Complaint next alleges on "information and belief" that Shapiro "fixed the survey so Option 2 would win", Dkt. 1 at 8.  Option 2 was the vote to decide where increased earnings would be allocated.    Plaintiffs have produced zero information indicating Option 2 was even manipulated.   Plaintiffs have no evidence that would support the allegations set forth their Complaint.  The allegation is entirely fabricated.

---

[102] *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009).  See also state law limitations on vicarious liability, *Hordyk v. Clallam County*, 23 Wn. App. 159, 595 P.2d 46 (1979).

EVELYN SHAPIRO'S MOTION FOR SUMMARY JUDGMENT
ECF Case No. 2:22 -cv-00245- - 16 of 19

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph

With regard to WWA TA#3, plaintiffs allege that she instructed Juan Sanchez to fix the vote. She denies it. He denies it. No one testifies that he or she observed Shapiro giving such an instruction or to any personal knowledge that Shapiro gave such an instruction. No one testifies that he or she observed Sanchez manipulating votes or that he or she has any personal knowledge of Sanchez manipulating votes. There are no e-mails, nor texts about fixing votes. Plaintiffs claim they performed a "computer forensic audit", Dkt 1 at 11, but the Lynx report produced discloses Lynx did not follow forensic standards that require Lynx examine the original data. Lynx looked solely at information Shanley gave them. Plaintiffs allege members could not vote because the software indicated they had already voted and that is how the suspect votes were discovered, but the data Lynx describes involves duplicated votes – two wholly inconsistent theories about WWA TA#3 and how the voting worked. None of the evidence links Shapiro or Sanchez to the alleged duplicated votes. Plaintiffs argue Sanchez managed equipment with that IP address, but LMG explains the IP address does not attach to an individual user and that the manner in which the data was reported could not have been generated by one user. The data was time stamped in various locations at rapid intervals for a long duration that could not be attributed to Sanchez. The allegations are fabricated and unsupported by any evidence of any probative value. Plaintiffs have no case. Their Complaint should be dismissed with prejudice.

**D.   Sanctions Warranted**

Fed. R. Civ. P. 11 (c) authorizes an award of sanctions on any attorney, law firm, or party that violates the rule. Sanctions are warranted for filing a frivolous complaint if 1) the complaint is legally or factually baseless from an objective perspective, and 2) the attorneys failed to conduct a reasonable and competent inquiry before signing and filing the complaint.[103] The purpose of the

---

[103] *Segan LLC v. Zynga, Inc.,* 131 F.Supp.3d 956 (N.D. Cal. 2015).

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph

rule is to deter baseless filings and curb abuses.  In this matter sanctions are warranted.  Shanley filed an unverified complaint replete with fabrications that have no basis in fact and that he pled for improper purposes.  Most egregiously he pled a complaint alleging Shapiro instructed Hutchins to "fix the fucking vote" when she said no such thing.  Shapiro reserves the right to pursue CR 11 sanctions by separate motion if plaintiffs do not promptly dismiss the case with prejudice.

## CONCLUSION

For the reasons previously stated, the Court should dismiss plaintiffs' Complaint with prejudice and award sanctions by separate motion under Fed. R. Civ. P. 11 should plaintiffs refuse to dismiss their complaint with prejudice promptly.

DATED this 26th day of January, 2023.

III BRANCHES LAW, PLLC

_____
Joan K Mell, WSBA #21319
Attorney for Evelyn Shapiro

EVELYN SHAPIRO'S MOTION FOR SUMMARY JUDGMENT
ECF Case No. 2:22 -cv-00245- - 18 of 19

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph

CERTIFICATE OF SERVICE

I, Taylor Fairey, certify as follows:

I am over the age of 18, a resident of Pierce County, and not a party to the above action. On January 26, 2023, I electronically filed the above Evelyn Shapiro's Motion for Summary Judgment, with the Clerk of the Court using the Pacer CM/ECF e-filing system which will send notification of such filing to all counsel of record who receives CM/ECF notification.

I certify under penalty of perjury under the laws of the State of Washington that the above information is true and correct.

DATED this January 26, 2023 at Fircrest, Washington.

*Taylor Fairey*

Taylor Fairey, Legal Assistant

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510 ph